**SINCLAIR REFINING COMPANY,**

v.

**George L. HOWELL.**

**No. 15257.**

United States Court of Appeals
Fifth Circuit.

May 13, 1955.

**638**

Frank M. Young, Ralph B. Tate, Birmingham, Ala., Spain, Gillon & Young, Birmingham, Ala., of counsel, for appellant.

Neal C. Newell, Francis H. Hare, Birmingham, Ala., Hare, Wynn & Newell, Birmingham, Ala., of counsel, for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

A father suing under the Alabama statute[1] for the wrongful death of his nineteen year old son, secured a verdict and judgment for damages in the amount of $30,000 from which this appeal is prosecuted. Three questions are presented for decision. The first and most important is whether, within the issues tried, the deceased was subject to the Workmen's Compensation Act of Alabama, and whether, for that reason, the district court erred in denying the defendant's motions for a directed verdict and for judgment non obstante veredicto. The other two questions are whether the court erred in defining the status of a volunteer in its oral charge to the jury, and whether the court erred in denying the motion for new trial on the ground that the verdict of the jury was excessive.

Hayward Howell, the brother of the deceased minor, John Arthur Howell, was in the process of opening a general store and gasoline filling station on U. S. Highway 231 in Montgomery County, Alabama, on the 17th day of November, 1951. John Arthur Howell was "in the general employ" of Hayward Howell on this date. One A. O. Hall, an employee of appellant as a maintenance mechanic, whose duties were to supervise and assist in the installation of equipment at vari-

---

1. "§ 119. * * * Suits for injuries causing death of minor child.—

"When the death of a minor child is caused by the wrongful act, or omission, or negligence of any person or persons, or corporation, his or their servants or agents, the father, or the mother, in cases mentioned in the preceding section; or if the father and mother are both dead, or if they decline to bring the action or fail to do so within six months from the death of the minor, the personal representative of such minor may sue, and in any case shall recover such damages as the jury may assess; but a suit by any one of them for the wrongful death of the minor shall be a bar to another action, either under this section or under section 123 of this title." Title 7, § 119, 1940 Code of Alabama.

ous filling stations, was engaged in supervising and assisting in the installation of a pole at Hayward Howell's filling station. The pole to be installed was wired for lights that were attached to it. The pole was about 22 feet long and about 6 inches in diameter at the bottom, tapered smaller toward the top, and weighed between 250 and 300 pounds. Hall reported to the Howell filling station on the morning of November 17, 1951, with one helper Hargrove to assist in the erection of the pole. There were some overhead electric power lines running parallel to the roadway and parallel to the pumps at the Howell station. Hall had a truck that had an "A" frame mounted on the rear of the truck bed with a pulley working through the "A" frame to be used in hoisting the pole into the air. The truck was between the pumps and the power lines. As Hall started hoisting the pole into the air Hargrove was unable to hold the larger end of the pole and requested that he have help. Some of the evidence tended to indicate that Hall authorized Hargrove to call for help. In response to this call one Sullivan Thomas came out to assist and the deceased also came out of the store to assist. Hall saw that the deceased was actually working and helping to lift or move the pole at the time the deceased was killed. Hall repeatedly gave instructions to the deceased, to Hargrove and others helping, about what they were to do. As Hall hoisted the pole in the air with the pulley, Hargrove, Thomas and the deceased had hold of the base of the pole and were holding the base down, attempting to lift it over some wooden frames, and place it in the hole where it was to rest. The deceased had nothing to do with the top of the pole hitting the high voltage line. Hall knew that the high voltage line was overhead, and, according to his own testimony, the duty rested on him to supervise the safe erection of the pole. He knew that if the pole touched the high voltage wire someone would probably be killed. His worker, Hargrove, had on rubber boots, but no precaution or warning was observed as to the deceased and the other helpers. The top of the pole came in contact with the high voltage line and John Arthur Howell was electrocuted.

The general verdict for the plaintiff was based upon two counts, one charging the defendant with negligence, and the other charging it with wanton misconduct. Under the rulings of the court, the plaintiff was required to amend his complaint so as to aver " * * * that the said John Arthur Howell * * * was not subject to the Workmen's Compensation Laws of Alabama * * *." [2] There was no express denial of this averment in the defendant's answer, and the only way that it was even impliedly denied was by the concluding sentence of the answer: "Defendant denies that the plaintiff is entitled to recover any damages in this cause." Rule 8(b) of the Federal Rules of Civil Procedure, 28 U. S.C.A., provides: "A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." Rule 8(d) provides: "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." The effect of the defendant's answer was to admit the averment that the deceased was not subject to the Workmen's Compensation Law of Alabama.[3] If the issue of applicability of

---

**2.** The rule in Alabama is that, when an employer-employee relationship is averred, the plaintiff in his complaint must bring the case from without the Compensation Act. See Steagall v. Sloss-Sheffield Steel & Iron Co., 205 Ala. 100, 87 So. 787; Kaplan v. Sertell, 217 Ala. 413, 116 So. 112; W. B. Davis & Son v. Ruple, 222 Ala. 52, 130 So. 772; and De Arman v. Ingalls Iron Works Co., 258 Ala. 205, 61 So.2d 764, which cites with approval Patterson v. Sears-Roebuck & Co., 5 Cir., 196 F.2d 947.

**3.** "The third sentence of subdivision (b) epitomizes the objective: 'Denials shall fairly meet the substance of the averments denied.' It follows that denials must not be evasive."

the Workmen's Compensation Act had been clearly drawn, as required by the rule, the appellee would have had the opportunity of developing that the deceased's "working for" his brother was at most a "casual" employment excluded from the terms of the Act,[4] or that the Act did not apply because his brother regularly employed less than eight employees.[5] Such possibilities illustrate the wisdom of the rule in requiring issues to be clearly drawn.

■ Further, the applicability of the Workmen's Compensation Act was not included within the issues made by the pre-trial order.[6] Rule 16, Federal Rules of Civil Procedure, provides that "* * * such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." To avoid the controlling effect of the pre-trial order, appellant points to an amendment to the complaint made just before the case was argued to the jury.[7] It seems to us a strained construction to say that by amending to aver simply that the deceased "was working for" his brother, he was thereby brought within the coverage of the Compensation Act. If the defendant so construed the amendment, it should have requested a modification of the pre-trial order, so that no one could be misled as to the issues on trial.

■ Still further, if the defense had been presented by the answer and if it had been included in the statement of the issues in the pre-trial order, the defendant would not on that defense have been due a directed verdict nor judgment non obstante veredicto, and the question is presented in no other manner.

Section 311 of Tit. 26 of the 1940 Code of Alabama, which restricted the liability of a third party defendant, himself subject to the Compensation Act, for death of a person for which compensation was payable by such person's employer, was repealed by General Acts of Alabama 1947, p. 485, § 2, approved October 9, 1947. Appellant urges the theory, however, that the deceased was a loaned employee, that he had become, for the time being, the servant of the appellant. See Martin v. Anniston Foundry Co., 259 Ala. 633, 68 So.2d 323, 327. Appellant's employee in charge of the work, A. O. Hall, testified positively that he did not employ the deceased nor give him any directions. It is without dispute that Hall did not pay or agree to pay the deceased any wage or compensation and would not have done so had he survived. The statement of Hall's helper, Hargrove, introduced in evidence as Defendant's Exhibit 1, reads in part:

"I nor Mr. Hall did not ask the deceased to come out to the scene. Mr.

---

2 Moore's Federal Practice (2nd Ed.) Paragraph 8.21, p. 1676.

4. Alabama Code of 1940, Title 26, Section 263.

5. See note (4) supra.

6. "It was agreed by all of the parties that the following are all of the issues in controversy in this cause:

"Plaintiff claims of the defendant $150,-000 damages for the wrongful death of his intestate (his minor son) which plaintiff contends proximately resulted from the negligence or wanton conduct of the defendant's agent in connection with the erection and installation of a pole or standard at a filling station whereby such pole came into contact with a high tension electrical wire and electrocuted plaintiff's intestate who was then assisting in such operation at the request or invitation of defendant's agent.

"The defendant denies negligence and wanton conduct and pleads contributory negligence. The defendant further insists that plaintiff's intestate was at most a bare licensee or volunteer, diminishing the duty of care for which plaintiff contends."

7. "On the occasion of said fatal accident, John Arthur Howell was working for Hayward Howell who was in possession of said premises engaged in constructing and equipping his own filling station, and who had a legitimate business interest in seeing that said sign and light post was installed there by the defendant, and John Arthur Howell when he was killed was assisting in handling said post or pole at the request of defendant's agent, one Hall, who was then and therein acting within the line and scope of his authority for the defendant Sinclair Oil Company."

Hall asked for Suliven Thomas * * * Hayward Howell, the deceased's brother, was the one that sent the deceased to the scene * * * nothing was said about any of the extra help getting any pay * * * Suliven Thomas says that he did not expect his pay * * * Mr. Hall did not even agree to buy them a Coca-Cola for their help."

In its answers to plaintiff's interrogatories, defendant said:

"The only employee who was working with A. O. Hall was John Hargrove.

* · * * * * *

"A. O. Hall was in charge of the erection of the pole. The only person employed to help with the erection of said pole was John Hargrove."

Clearly, therefore, the defendant was not due a directed verdict upon the theory that the deceased had become its employee.

■ Referring to defendant's opposite contention, that the deceased was a mere volunteer, the court orally charged the jury as follows:

"If you are reasonably satisfied by the evidence in this case that John Arthur Howell, the dead boy, was employed by his brother, Hayward Howell, or was helping his brother in readying his place of business for operation, and if you are further reasonably satisfied by the evidence that the relation of Hayward Howell or that of his dead brother, John Arthur Howell, to the work of installing the fixtures, including the pole bearing the Sinclair sign and lights, was such that he might reasonably be expected to have some interest in the time or manner of its performance, that is to say an interest—I repeat that for emphasis, as distinguished from the mere

curiosity or officiousness which characterizes a mere inter-meddler, then I charge you it was the duty of Mr. Hall to do his work in such a way as not negligently to injure John Arthur Howell or to cause his death."

The only objection to this instruction appears in the following statement of the court made at the conclusion of the oral charge. "The Court: The record will show that the Defendant reserves exception to the definition by the Court of the issue as to whether John Arthur Howell was or was not a volunteer." The grounds upon which appellant now criticizes the instruction [8] do not appear to have been assigned as required by Rule 51, Federal Rules of Civil Procedure. See 5 Moore's Federal Practice, (2nd ed.) Sec. 51.04. We are not, therefore, called on to discuss the objection to this instruction.

■ The Alabama statute, under which this action was brought (see footnote 1, supra), provides that for the wrongful death of a minor child the father "shall recover such damages as the jury may assess". As the wording of the statute indicates, the amount rests largely in the sound discretion of the jury. The damages are entirely punitive, imposed for the preservation of human life, and measured by reference to the quality of the wrongful act and the degree of culpability. Richmond & D. R. Co. v. Freeman, 97 Ala. 289, 11 So. 800, 801. The $30,000 verdict in this case is more than has ordinarily been approved by the Alabama Supreme Court even for wanton misconduct. The district court has, however, denied the motion for new trial based on excessiveness. The record discloses no appeals to prejudice nor other misconduct on the part of plaintiff's counsel. The Alabama Supreme Court has nevertheless on occasions required a reduction of such a verdict. See Montgomery Light & Water Power Co. v.

8. "We urge that the Court's charge is erroneous under Alabama law in submitting to the jury the 'interest in the work' theory." "It is submitted that the Trial Court should have submitted to the jury the issue as to whether Hall was confronted with an emergency."

642

Thombs, 204 Ala. 678, 87 So. 205. In the federal courts, under the Seventh Amendment, such a motion for new trial can be reviewed on appeal only for error of law, a term which includes abuse of discretion. See Whiteman v. Pitrie, 5 Cir., 220 F.2d 914. We are not prepared to say that the district court abused its discretion in denying the motion for new trial in this case.

On the other hand, in view of the size of the verdict, we cannot hold that the appeal was taken merely for delay, and we, therefore, deny the appellee's request for penalty damages as provided by Rule 30(2) of this Court.

Affirmed.

CAMERON, Circuit Judge, concurs in the result.