Chief Judge Fuld.
During street rioting which erupted in Rochester in July of 1964, the Director of the Monroe County Civil Defense Office, Robert N. Abbott, decided that it would be useful to charter a helicopter in order to survey traffic and observe the disorder from the air. With the approval of the City Manager, he telephoned to the defendant, Page Airways, an airplane chartering service, to ascertain whether its helicopter “ was available” for that purpose. Upon being told that it was, Mr. Abbott arranged for a flight and, several hours later, after placing Civil Defense radio equipment aboard, he embarked, piloted by an employee of the defendant.
While flying low over the city, the helicopter crashed, killing four people—including Abbott and the pilot — injuring two others and causing considerable property damage. Ten separate actions, all arising out of this accident, were consolidated at a joint trial resulting in separate judgments against the defendant, totaling about $275,000.[1] On appeal, each judgment was unanimously affirmed by the Appellate Division, and we granted leave, primarily, to consider (1) the defendant’s *507 asserted immunity from suit and (2) the propriety of the trial court’s charge to the jury on the theory of res ipsa loquitur, despite the fact that the plaintiff had introduced specific evidence of negligence on the part of the defendant’s pilot.
We may dispose, quite briefly, of the defendant’s claim to immunity—noting, initially, that the policy of this State has been to reduce rather than increase the obstacles to the recovery of damages for negligently caused injury or death, whether the defendant be a private person (see, e.g., Gelbman v. Gelbman, 23 N Y 2d 434; Bing v. Thunig, 2 N Y 2d 656, 667)[2] or a public body (Court of Claims Act, §§ 8, 8-a; General Municipal Law, §§ 50 through 50-d). It is true that a provision of the New York State Defense Emergency Act (L. 1951, ch. 784, § 113, as amd.) grants immunity to “ any * * * corporation * * * or any of [its] agents * * *, in good faith * * * complying with * * * any law * * * rule, regulation or order duly promulgated or issued pursuant to [the] act,” so long as the directive that is being obeyed “ relat[es] to civil defense ” or is “in connection with an authorized drill” of the “civil defense force[s] ”[3]. Such a “ drill” may be held, when the chief executive of a city so directs, to assist in the protection of life or property threatened by flood, drought, earthquake, hurricane “ or other catastrophe arising from causes other than enemy attack”. (General Municipal Law, § 209-n, subd. [a]; see, also, County Law, *508 § 656-a.)[4] However, it is doubtful that the statutory term “catastrophe” includes civil disorders of the kind which occurred in Eochester and, even assuming that it does, and assuming further—though with far less basis in the record— that Abbott’s ill-fated flight was a “drill” within the intendment of the statute, it is plain beyond dispute that the conditions for immunity were not met in this case..
The simple fact is that, in providing a helicopter and pilot for the use of Abbott, the defendant, Page Airways, was not complying with any ‘‘ law * * * rule, regulation or order * * * promulgated or issued ” under the Defense Emergency Act or under any other statute. It was doing nothing more, it is clear from the record, than engaging in its regular business of providing air transportation for hire. Mr. Abbott, in arranging for the flight, did not, even by implication, issue an order to Page Airways or commandeer the helicopter; he asked if it was “ available ” and only when, after some delay, he was told that it was, did he go forward with plans for its use. He had been authorized by the City Manager to obligate the city for payment for the' rental of the aircraft. The manifestly self-serving conduct of the defendant after the accident, when it forbore to present a bill to the city and claimed, instead, that the aircraft had been commandeered, was not enough to bar the trial court from determining, as matter of law, that the rental was voluntary and in the ordinary course of the defendant’s business.
There is no proper analogy—contrary to the defendant’s contention—between this case and the calling of private persons into service by a peace officer to assist in making an *509 arrest or in curbing a public disorder. (See, e.g., Code Crina. Pro., §§ 102, 104, 110; former Penal Law, §§ 1848, 2095; Biker v. City of New York, 204 Misc. 878, affd. 286 App. Div. 808.) Neither the defendant nor its employee pilot had any such role on the afternoon of the fatal accident. They were only retained to provide transportation over the troubled area, presumably well out of harm’s way, so that Abbott could see and report on what was happening below. That some of the people on the ground were rioters or potential rioters made no more difference, at helicopter height, than if they had been on a peaceful parade. The defendant was, therefore, obligated to the same standards of care and was subject to the same liabilities as it would have been in connection with any other charter of its aircraft, and the trial court was entirely correct in so instructing the jury. What we have said, it may be noted, disposes also of the defendant’s further contention that the trial court erred in charging the jury that Abbott did not assume the risk of the flight.
This brings us to the question whether the plaintiff was deprived of a right to rely on res ipsa principles once she introduced evidence of specific acts of negligence on the part of the defendant’s pilot — evidence, for instance, that the latter waved to someone on the ground just before the accident; that, in violation of regulations, he flew at too low an altitude and at too slow a speed; and that he had taken several drinks shortly before the flight. On the strength of this proof, the jury could properly have found that the accident was caused by the pilot’s violation of the provisions of statute and regulation governing the operation of helicopters (see, e.g., General Business Law, § 245; Federal Aviation Regulations, § 91.79), and the trial judge, at the close of the evidence, so instructed the jurors. In addition, the judge invoked the doctrine of res ipsa loquitur, charging that they could “infer negligence from the happening of the accident.”[5]
*510 The rule of res ipsa loquitur permits an inference of negligence to be drawn if the instrumentality causing the injury to the plaintiff was “in the exclusive possession and control of the person charged with negligence * * * and * * * the accident would not ordinarily have occurred without neglect of some duty owed to the plaintiff ”, (Galbraith v. Busch, 267 N. Y. 230, 234; see, also, Foltis, Inc. v. City of New York, 287 N. Y. 108, 114-115, 116-117; Manley v. New York Tel. Co., 303 N. Y. 18, 25.) When these requirements have been met— and, of course, they are in the case of an aircraft accident (see, e.g., Zaninovich v. American Airlines, 26 A D 2d 155; Seaman v. Curtiss Flying Serv., 231 App. Div. 867; Citrola v. Eastern Air Lines, 264 F, 2d 815; Lobel v. American Airlines, 192 F. 2d 217, cert. den. 342 U. S. 945) —the jury may reasonably infer that the defendant was negligent, even though the actual or specific cause of the accident is not known. The defendant before us does not dispute this but he contends that the plaintiff’s introduction of evidence of specific acts of negligence on the part of Page’s pilot compelled her to rely solely on that evidence and disabled her from relying on res ipsa principles.
In support of this contention, the defendant points to certain language in several New York cases to the effect that the inference arising from res ipsa loquitur cannot be availed of where plaintiff introduced evidence as to the specific act of negligence which is allegedly the cause of the injury complained of. (See Bressler v. New York R. T. Corp., 270 N. Y. 409, 413; Whitcher v. Board of Educ., 233 App. Div. 184, 185; Cunningham v. Lence Lanes, 25 A D 2d 238; see, also, Zaninovich v. American Airlines, 26 A D 2d 155, supra; Goodheart v. American Airlines, 252 App. Div. 660, 662-663.) We do not, however, educe such a rule from the cases; they are, as we read them, distinguishable. In Bressler (270 N. Y. 409, supra), for example, it is enough to point out that in a later decision in the same case (277 N. Y. 200, 202) the court wrote that the reversal on the first appeal 1 ‘ was due to the confused charge wherein, as we stated, the jury might have found the defendant liable for the [causes of the injury evidenced by the specific proof] neither of which under the circumstances proved negli *511 gence.” (Emphasis supplied.)[6] In this connection, we note that the Federal Court of Appeals for this Circuit, after subjecting the same decisions (cited above) to a “ [c]lose analysis ”, concluded that they do not support the position that res ipsa may not be charged once evidence of a specific" act of negligence is adduced. (Citrola v. Eastern Air Lines, 264 F. 2d 815, 817, supra; see, also, Lobel v. American Airlines, 192 F. 2d 217, 219-220, supra.) Indeed, the Federal court went on to say, “ [o]n the contrary, they not only support but almost compel” a contrary result (p. 817).
Since, then, our decisions do not require the conclusion that the plaintiff is precluded from relying on res ipsa principles even though he has introduced evidence to support his claim of negligence, we are faced with the question whether such a rule should be adopted.
It must, of course, be acknowledged that it would be impermissible to rely on res ipsa if the proof adduced by the plaintiff actually refutes or negates the inference which might otherwise have been drawn from application of that doctrine. This is common sense. However, the mere fact that the plaintiff seeks to bolster his case by introducing specific evidence of the defendant’s negligence should not compel the plaintiff to forego reliance on the rule of res ipsa loquitur. In point of fact, as the Appellate Division observed in Zaninovich (26 A D 2d, at p. 157), requiring the plaintiff to elect between res ipsa and specific evidence not only “ involve [s] grave logical difficulties ” but has been the subject of criticism by such distinguished authors in the field of torts as Prosser (Torts [3d ed.], p. 236) *512 and Harper & James (Law of Torts, vol. 2, § 19.10, pp. 1098-1099).[7]
It is clear that there can be no logical or reasonable basis for requiring a plaintiff to choose between res ipsa and specific evidence of negligence or for precluding him from relying on res ipsa principles once evidence of negligence had been introduced, unless the two alternate modes of proof are fundamentally or inherently inconsistent. Quite obviously, there is no such inconsistency. The principle that “ the thing speaks for itself ” does not state a separate theory on which a plaintiff may recover for injury. It amounts to nothing more than “ a common-sense application of the probative value of circumstantial evidence ” (Galbraith v. Busch, 267 N. Y. 230, 235, supra), and a brief analysis of the logical basis for res ipsa dispels any idea that it is incompatible with specific evidence of fault.
In nearly every negligence case, there are, in the abstract, many possible causes of the injury-producing event. In most cases, some of these possible explanations would tend to implicate the defendant and others would exonerate him but no one explanation is so highly probable as to exclude reasonable consideration of the others. In such a case, the usual one, specific evidence of the cause of the plaintiff’s injury is obviously indispensable. Without such evidence, the jury would lack any basis for logically inferring that it was the defendant’s negligence rather than one of the other possible causes that was, in fact, the source of the harm.
The res ipsa case differs from the conventional case in one respect only—that, among all the possible causes of the injury, those which point to the defendant’s negligence are so probable, *513 in view of the circumstances of the accident, and those which would exonerate him are so improbable, that it is unnecessary to specify the one that actually led to the occurrence.[8] However, merely because proof of the specific cause of the plaintiff’s injury is unnecessary to support an inference of the defendant’s negligence in a res ipsa case, it does not follow that specific proof is inconsistent with that inference — or that one must exclude the other. The specific evidence adduced may merely support one of the many possible explanations of the accident, known or unknown. (See Seaman v. Curtiss Flying Serv., 231 App. Div. 867, supra; Citrola v. Eastern Air Lines, 264 F. 2d 815, 818, supra; Becker v. American Airlines, 200 F. Supp. 839, 840; see, also, 2 Harper & James, The Law of Torts, § 19.10, pp. 1098-1099.) If the jury finds that it was the specifically proved act of negligence which occasioned the accident, that is the end of the matter. But, if the jury deems the specific evidence unconvincing, there is no reason whatever why it may not infer that the remaining possible causes, though they be unidentified, still point to the negligence of the defendant.
Taking this view, Professors Harper and James in their work on The Law of Torts, after observing that specific proof “ may show just how the accident happened and this showing may preclude the likelihood of defendant’s negligence or so reduce it as to leave an insufficient basis of probabilities for an inference of negligence ”, went on to say (vol. 2, pp. 1098-1099):
“ Short of this, the fact that a plaintiff offers specific proof should be given no more than its logically probative effect, and this may not eliminate some of the possible explanations of the occurrence. * * * [The evidence] may, if credited, lead to a finding of specific negligence * * *. In that case, the doctrine [of res ipsa loquitur] is not needed. But if the proof of that explanation fails (either because it is legally insufficient or because it is not credited), the mere fact that it was offered has no logical *514 tendency to eliminate other explanations involving * * * negligence * * * and there is no sound basis for denying application of the doctrine”. (Emphasis supplied.)
In the case before us, the evidence of the specific acts — far from contradicting or overcoming the inference of res ipsa — actually enhanced the probability that the accident was caused by the defendant’s negligence. It would have been unreasonable to deprive the plaintiff of the benefit of res ipsa simply because she called on witnesses to show that the pilot had flown too low or too slow or that he had waved to someone on the ground. Certainly, she should not be penalized because she offered more proof than was required to establish her case.
In Citrola v. Eastern Air Lines (264 F. 2d 815, supra), a ease remarkably similar to the present one, the Federal Court of Appeals, in approving a charge which allowed the jury to reach a verdict for the plaintiff on the basis of either the specific evidence or res ipsa, declared (p. 819),
“ Should this court hold that such a charge is erroneous, plaintiffs in the future would hesitate to introduce whatever evidence they might have available as to the cause of injury for fear that thereby they would be deprived of an otherwise appropriate res ipsa charge. Such a rule would, as this court pointed out in Lobel v. American Airlines, Inc., supra, operate to ‘ penalize a res ipsa loquitur plaintiff who * * * probes deeply into the defendant’s behavior and thus discloses specific acts of negligence that may have ■ caused the accident. ’ 192 F. 2d at page 220 (Emphasis added).”
In short, the introduction of some evidence does not render an instruction on res ipsa impermissible or improper. In the case before us, the charge given was neither confusing nor contradictory. The trial court was fully justified, as the Appellate Division concluded, in charging res ipsa even though the plaintiffs had introduced evidence of specific acts of negligence.
The defendant’s remaining contentions require only brief comment. The defendant’s perfunctory claim that the trial judge committed error in overruling defendant’s further objections to the charge and denying its requests raises no question *515 of substance beyond those already discussed. Nor does the assertion that the court erred in granting an additional allowance of $3,000 to the attorneys for the plaintiff Abbott estate under CPLR 8303 (subd. [a], par. 2) present any reviewable question, since the matter clearly rested in the sound discretion of the courts below. (See, e.g., Metropolitan Sav. Bank v. Tuttle, 293 N. Y. 26, 30; Dudley v. Perkins, 235 N. Y. 448, 457-458.)
The orders appealed from should be affirmed, with costs.
Judges Burke, Scileppi, Bergan, Keating, Breitel and Jasen concur.
Orders affirmed.

. In order to simplify the trial of the 10 eases, the trial court ordered that the wrongful death action brought by Abbott’s estate be heard first. All the other plaintiffs adopted the evidence on liability introduced in the Abbott case, and all cases went to the jury together on that issue. Thus, in deciding this appeal, we concern ourselves with the facts adduced in Abbott and, for convenience, refer throughout to the “ plaintiff ” in the singular.

. As we said in the Bing case (2 N Y 2d, at pp. 666, 667), in a different but relevant context, “ [1] lability is the rule, immunity the exception. * * * The rule of nonliability is out of tune with the life about us, at variance with modern-day needs and with concepts of justice and fair dealing.”

. The statute, in somewhat greater detail, recites (New York State Defense Emergency Act [L. 1951, ch. 784, § 113, as amd.]) : “ The state, any political subdivision, municipal or volunteer agency, or another state or a civil defense force thereof or of the federal government or of another country or province or subdivision thereof, performing civil defense services in this state pursuant to an arrangement, agreement or compact for mutual aid and assistance, or any agency, member, agent or representative of any of them, or any individual, partnership, corporation, association, trustee, receiver or any of the agents thereof, in good faith carrying out, complying with or attempting to comply with any law, any rule, regulation or order duly promulgated or issued pursuant to this act * * * relating to civil defense * * * or in connection with an authorized drill or test, shall not be liable for any injury or death to persons or damage to property as the result thereof.”

. Section 209-n (subd. [a]) of the General Municipal Law reads, in its entirety, as" follows:
“Upon the threat or occurrence of a natural disaster emergency such as flood, drought, tidal wave, fire, earthquake, hurricane, windstorm or other storm, landslide or other catastrophe' arising from causes other than enemy attack as defined in the New York state defense emergency act, .and during and Immediately following the same, and except as otherwise provided in subdivision (d) of this section, the chief executive of a city may direct the civil defense director of the city to assist in the protection and preservation of human life or property by holding a civil defense drill and training exercise at the scene of the disaster and at any other appropriate places within the city, in which all or any civil defense forces may he called upon to perform the civil defense duties assigned to them.”

. This was the charge on the subject of res ipsa: “If the instrumentality, the helicopter, causing the injury was in the exclusive control of the defendant, Page Airways, and if the circumstances surrounding the happening of the accident were of such a nature that in the ordinary course of events it would not have occurred, if the person having control of the instrumentality had used reasonable care under the circumstances, the law permits, but does not require, you to infer negligence from the happening of the accident.”

. As to the other eases, the court in Zaninovich held that, despite the plaintiff’s specific proof of negligence and a jury charge based thereon, a further charge on res ipsa was not prejudicial. The opinion in Cunningham relied, mistakenly, on Bressler and on Whitcher, the latter being a ease in which the proof appeared to negate the inference of negligence on the part of the defendant. And in Goodheart, where the verdict had been for the defendant, the court, although referring to Whitcher and Bressler, reversed because the trial judge had prefaced his res ipsa charge with the confusing statement, “we do not know what occurred” (252 App. Div. 660, at p. 663), thus depriving the plaintiff of the benefit of his persuasive specific proof.

. In Zaninovich, the court also acknowledged that the requirement to elect “ has been blunted by a corollary rule ” which permits the plaintiff to rely on res ipsa despite evidence of specific negligence so long as such evidence “does not fully account for the accident [cases cited] ” (26 A D 2d, at p. 158). As indicated in the text (pp. 512-514), more general principles should guide decision in cases of this kind. The test of whether an explanation “fully accounts” for an occurrence is ambiguous in meaning and elusive in application—> unless it signifies that the proof must not only make out a prima facie ease on the issue of negligence but be conclusive on the issue of cause, thus excluding consideration by the jury of any other possible causes under a res ipsa charge.

. This is what is meant by statements such as those in Foltis, Inc. v. City of New York (287 N. Y. 108, 116, supra), where the court wrote that “certain occurrences contain within themselves a sufficient basis for an inference of negligence” and that, in a res ipsa case, “the facts and circumstances from which the inference of negligence is drawn are immediately attendant on the occurrence."