LAWRANCE TURNER and URSULA TURNER, Plaintiffs-Appellees, *v*. RODNEY K. WILLIS, SR., HAWAIIAN REINFORCING STEEL CO., LTD., and JOHN DOES 1 to 10, Defendants-Appellants

No. 6186

JULY 17, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

This is an appeal from a judgment entered pursuant to a jury verdict returned in favor of plaintiffs-appellees (hereinafter appellees) in a personal injury action. We conclude that the judgment must be reversed and the cause remanded for new trial.

In their complaint, appellees alleged that appellant Rodney K. Willis negligently operated and/or negligently maintained a motor vehicle so that a pipe which protruded from the side of the motor vehicle struck and injured appellee Ursula Turner. The evidence adduced at trial indicated that on the morning of June 7, 1972, Ursula Turner and her husband, appellee Lawrance Turner, were walking along Kuakini Highway ("Old Kona Airport Road") near the Palani Road junction in Kailua-Kona, County of Hawaii. The weather on that day was clear and sunny. As appellees walked along a curved portion of the highway, a pickup truck owned by appellant Hawaiian Reinforcing Steel Co., Ltd.,[1] and operated by appellant Willis rounded the curved portion of the highway. The truck was traveling in the opposite direction from that in which the appellees were headed.

---

[1] Hawaiian Reinforcing Steel Co., Ltd., appellant Willis's employer, was included as a party defendant under the doctrine of respondeat superior.

As the pickup truck passed appellees, Lawrance Turner heard a "thud", and his wife immediately exclaimed, "Larry, I've been hit. I've been hit with a rock". She then fell to the ground with serious injuries about her right eye and cheek. While giving aid to his wife, Lawrance Turner noticed that the pickup truck driven by Willis had stopped. Turner then noticed that a pipe was protruding from the right side of the truck.

The parties stipulated at trial that the galvanized iron pipe which Turner saw protruding from the truck was 1¼ inches in diameter. The pipe was affixed to the right rear portion of the truck by means of a hingelike attachment which permitted the pipe to swivel on a horizontal plane. The parties further stipulated that when extended at an angle of 90° from the side of the truck, the pipe was 51½ inches above the ground and extended some 35½ inches from the right side of the truck. The pipe was normally secured flush against the side of the truck by means of a wire attached to a bracket on the right side of the truck. Appellant Willis testified that he did not check to see whether the pipe was securely fastened before he drove the truck on the day of the accident.

Appellants contended that appellees were contributorily negligent because they were walking in the middle of one lane of the two-lane roadway at the time the accident occurred. Appellees maintained, however, that they never walked upon the roadway itself and that they were definitely on the shoulder of the highway, facing oncoming traffic, at the time of the accident.

Ursula Turner acknowledged that she was looking down at the ground at the time that she was hit and that she never saw the truck coming. Lawrance Turner indicated that although he did see the truck coming, he did not actually see the pipe protruding from the side of the truck until after the accident had occurred.

The jury returned a verdict, upon special interrogatories, finding that appellant Willis was negligent and that his negligence was a proximate cause of the accident. The jury found that Ursula Turner was also contributorily negligent, but it failed to find that her contributory negligence was a proxi-

mate cause of the accident.[2] The jury thus failed to respond to a special interrogatory regarding possible apportionment of negligence between appellant Willis and appellee Ursula Turner.

The jury awarded general and special damages against appellants in the total amount of $92,000. Judgment pursuant to this verdict was filed on November 13, 1975. A bill of costs and notice for taxation of costs were also filed on the same date.

## I. RES IPSA LOQUITUR INSTRUCTION

Appellants contend that the trial court erred in giving Plaintiffs' Instruction No. 2 to the jury. This instruction, given over appellants' objection, read as follows:

On the issue of negligence, one of the questions for you to decide in this case is whether the accident occurred under the following conditions:

First, that it is the kind of accident which ordinarily does not occur in the absence of someone's negligence;

Second, that it was caused by an instrumentality in the exclusive control of the defendants; and

Third, that the accident was not due to any voluntary action or contribution on the part of the plaintiffs which was the responsible cause of plaintiff's injury.

If, and only in the event that you should find all these conditions to exist, *you are instructed from the happening of the accident involved in this case that a proximate*

---

[2] We are, of course, puzzled by this finding, which by its terms seems contradictory. It seems unusual for a jury to find a party "contributorily" negligent and yet find that the "contributory" negligence was not a proximate cause of the accident. However, the wording of the special interrogatory jury verdict form permitted such a result, and neither party objected to this formulation of the special interrogatories. While the conclusions stated hereinafter make it unnecessary for us to discuss this point any further, we feel that this portion of the special interrogatory verdict form should have merely asked whether the defendant was negligent (as opposed to being "contributorily" negligent), and whether, if the defendant was negligent, his negligence was a proximate cause of the accident.

*cause of the accident was some negligent conduct on the part of the defendants.* [Emphasis added.]

Appellants argue that this instruction was erroneous because it compelled the jury to find negligence on the part of the defendants once the jury found that the accident occurred under the three conditions described. Appellants maintain that the theory of res ipsa loquitur merely permits, rather than compels, an inference of negligence once the jury finds that the requisite res ipsa loquitur elements exist.

Appellants further argue that the instruction was erroneous because it provided that once the jury inferred negligence on the part of the defendants, the jury was required to find that the negligence was also a proximate cause of the accident.

We agree that Plaintiffs' Instruction No. 2 was clearly erroneous and could have been misleading to the jury.

First, however, we must dispose of appellees' contention that appellants failed to properly object to Plaintiffs' Instruction No. 2 at trial. Appellees argue that appellants' counsel merely objected to Plaintiffs' Instruction No. 2 on the general grounds that the res ipsa loquitur theory was inapplicable under the facts presented in this case. Appellees assert that appellants' current additional objection to the instruction on the ground that it states the law incorrectly with specific regard to negligence and proximate cause under the doctrine of res ipsa loquitur is improper given the provisions of HRCP Rule 51(e).[3] Appellees state that under that Rule, a party may not object to an instruction on one ground at trial and then attempt to rely on a different ground of objection on appeal.[4]

---

[3] HRCP Rule 51(e) provides as follows:

*Instructions and Objections.* The court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the refusal to give, or the modification of, an instruction, . . ., unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.* Opportunity shall be given to make the objection out of the hearing of the jury. [Emphasis added.]

[4] Appellees cite these cases in support of this proposition: *White Auto Stores, Inc. v. Reyes,* 223 F.2d 298 (10th Cir. 1955); *Sinclair Refining Co. v. Howell,* 222 F.2d 637 (5th Cir. 1955); *Stilwell v. Hertz Drivurself Stations, Inc.,* 174 F.2d 714 (3d Cir. 1949).

This Court has previously indicated that the provisions of HRCP Rule 51(e) may be construed in a liberal manner. *See Struzik v. City and County of Honolulu*, 50 Haw. 241, 246, 437 P.2d 880, 884 (1968). However, we need not decide whether appellants' counsel's objection to Plaintiffs' Instruction No. 2 was sufficiently explicit to apprise the trial court of the issues raised for purposes of HRCP Rule 51(e). Even if we were to assume that the grounds of objection stated at trial were inadequate to preserve all the issues now raised on appeal, such an assumed failure to adequately object is not an absolute bar to this Court's consideration of an instruction which, in our opinion, constitutes reversible error. *Frederic P. Wiedersum Associates v. National Homes Construction Corp.*, 540 F.2d 62, 66 (2d Cir. 1976). It is held that even the complete failure to object to a jury instruction does not prevent an appellate court from taking cognizance of the trial court's error if the error is plain and may result in a miscarriage of justice. *Industrial Development Board v. Fuqua Industries, Inc.*, 523 F.2d 1226, 1238 (5th Cir. 1975); *Williams v. City of New York*, 508 F.2d 356, 362 (2d Cir. 1974); *City of Nome v. Ailak*, 570 P.2d 162, 171 (Alaska 1977). For reasons which we now set forth, we find it necessary to apply the plain error rule here.

Generally speaking, the doctrine of res ipsa loquitur provides that "whenever a thing that produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of the injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care." *Ciacci v. Wooley*, 33 Haw. 247, 257 (1934). "[T]he doctrine of res ipsa loquitur is merely procedural and [is] not a rule of substantive law", *Guanzon v. Kalamau*, 48 Haw. 330, 335, 402 P.2d 289, 293 (1965), and its effect is merely to raise a rebuttable inference of negligence so as to allow a plaintiff to get his case to the jury. *Winter v. Scherman*, 57 Haw. 279, 282, 554 P.2d 1137, 1139 (1976). Under the res ipsa loquitur theory, then, "[t]he fact of the

casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer or that it is necessary to offer" "without further proof . . . of the defendant's duty and of his negligence to perform it." *Ciacci v. Wooley, supra,* at 258.

It is well-settled in this jurisdiction that "an instruction covering the doctrine of *res ipsa loquitur* should permit, but not compel, an inference of negligence." *Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 87, 412 P.2d 669, 678, *reh. denied,* 49 Haw. 267, 414 P.2d 428 (1966); *accord, Winter v. Scherman, supra,* 57 Haw. at 282, 554 P.2d at 1139; see also *Guanzon v. Kalamau, supra,* 48 Haw. at 335, 402 P.2d at 292 n. 3. Plaintiffs' Instruction No. 2 was, therefore, erroneous because it told the jury that if it found that the three described res ipsa loquitur factual conditions existed, then *"you are instructed* from the happening of the accident involved in this case that a proximate cause of the accident was some negligent conduct on the part of the defendants." Such an instruction compelled an inference of negligence once the jury found that the three described conditions existed. The jury should instead have been advised that while the three described conditions were circumstances for their consideration in determining whether the defendants were negligent, a finding that the three conditions existed did not necessarily *require* a finding that the driver was negligent. *Cf. Novis v. Sheinkin,* —— App.Div.2d ——, ——, 400 N.Y.S.2d 161, 162 (1977).

It is also well-established that the doctrine of res ipsa loquitur has no application to proximate cause. *Travelers Insurance Co. v. Hulme,* 168 Kan. 483, 486, 213 P.2d 645, 647 (1950); *see McKeever v. Phoenix Jewish Community Center,* 92 Ariz. 121, 123, 374 P.2d 875, 877 (1962) (en banc). Therefore, Plaintiffs' Instruction No. 2 was potentially misleading because it in effect also told the jury that if the three conditions described were found to exist, then the jury was to automatically find that a *proximate cause* of the accident was the negligence of the defendants.

It is, of course, true that the trial court was entitled to find as a matter of law that the defendants were negligent and that

their negligence constituted a proximate cause of the accident. *Cozine, supra; accord, Winter v. Scherman, supra.* In such a case, however, the jury should have been specifically so apprised of the trial court's finding. There is no indication from either the language of Plaintiffs' Instruction No. 2 or from the remainder of the record that the court below in fact made any such determinations of law. Hence, we are unable to conclude that Plaintiffs' Instruction No. 2 constituted an attempt on the part of the trial court to instruct the jury as to the court's determinations of law regarding negligence and proximate cause.

Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. *City and County of Honolulu v. Bennett,* 57 Haw. 195, 206, 552 P.2d 1380, 1388 (1976); *Gelber v. Sheraton-Hawaii Corp.,* 49 Haw. 327, 330-31, 417 P.2d 638, 640 (1966). While it is, of course, impossible to ascertain the precise effect which Plaintiffs' Instruction No. 2 had upon the jury's determinations, we find that the instruction, as worded, could have been misleading to the jury. Therefore, we are unable to conclude that the error below was harmless, and we reverse and remand this case for new trial.[5] *City and County of Honolulu v. Bennett, supra,* 57 Haw. at 206, 552 P.2d at 1388.

## II. TAXATION OF COSTS

Appellants also contest the trial court's allowance of certain expenses as costs taxed in favor of appellees. Although

---

[5] We make no definitive finding as to appellants' contention that a res ipsa loquitur instruction was inappropriate given the evidence produced by appellees at trial. While we feel that such an instruction may have been unnecessary due to appellees' introduction of specific evidence of appellant Willis's negligence (*i.e.,* his failure to check if the pipe was securely fastened to the side of the truck), the trial court was in no way precluded in that situation from giving an instruction on res ipsa loquitur. *Abbott v. Page Airways, Inc.,* 23 N.Y.2d 502, 510-14, 245 N.E.2d 388, 392-95, 297 N.Y.S.2d 713, 719-22 (1969).

However, common sense dictates that once the trial court agreed to give such an instruction to the jury, that instruction had to reflect a correct statement of the law and could be neither confusing nor contradictory. *Cf. Abbott, supra.*

an assessment of the propriety of the taxation of these expense items as costs is not essential to the disposition of this case, we feel it necessary, due to the likelihood of reappearance of these questions on remand, to discuss the objections raised by appellants.

The costs objected to may be grouped into four categories: (1) witness fees and expenses for out-of-state witnesses; (2) witness fees and expenses for persons subpoenaed but not testifying at trial; (3) travel expenses incurred by appellees' counsel in taking depositions; and (4) costs of copies of depositions.

> (1) Witness fees and expenses for out-of-state witnesses.

Appellants contend that the trial court abused its discretion by taxing as costs the expense for air fare and subsistence for witnesses Dr. Edwin Hill and Dr. Roy Machida, both of whom traveled from California to testify at trial.[6] Appellees argue that the testimony of these two out-of-state physicians, who treated Ursula Turner in California, was necessary to show the nature and extent of her eye injury.

HRCP Rule 54(d) provides:

> *Costs.* Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . . .

HRS § 607-9 (1976 Repl.) provides:

> *Cost charges exclusive; disbursements* . . . .

> All actual disbursements sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs.

The issue of the allowance as costs of travel and subsistence expenses for out-of-state witnesses was previously discussed by this Court in *Harkins v. Ikeda,* 57 Haw. 378, 557

---

[6] Appellants similarly object in their opening brief to the taxation of the expense of air fare and subsistence for Dr. James Penoff, who also assertedly came from the mainland to testify. However, the bill of costs submitted by appellees fails to reflect the taxation of any costs for the expense of air travel for Dr. Penoff from the mainland to Hawaii. The total witness fees and mileage taxed with regard to Dr. Penoff was $56.76.

P.2d 788 (1976). In *Harkins,* we upheld the trial court's decision that HRS § 607-12 (1976 Repl.) must be construed together with the subpoena jurisdiction of the court and that the mileage to which an out-of-state witness is entitled can be no greater than the distance from the state's furthermost subpoena jurisdictional point to the place of trial. Our decision was premised on the view that the trial court was vested with considerable discretion in allowing or disallowing cost items, and its discretion was properly exercised in that case with reference to foreign witness travel expenses, which are not specifically allowed by statute. 57 Haw. at 386, 557 P.2d at 794.

Appellants place great reliance upon *Farmer v. Arabian American Oil Co.,* 379 U.S. 227 (1964), and its progeny to support the contention that a trial court is not confined to the subpoena jurisdiction of the state in awarding costs for travel expenses of an out-of-state witness. The current prevailing view under Rule 54(d) of the Federal Rules of Civil Procedure is that the trial court may, in the proper exercise of its discretion, award as costs the travel expenses for witnesses coming from beyond the 100-mile jurisdiction of the federal district courts. *Moylan v. AMF Overseas Corp.,* 354 F.2d 825, 829-30 (9th Cir. 1965); *Sperry Rand Corp. v. A-T-O, Inc.,* 58 F.R.D. 132, 136-37 (E.D.Va. 1973); *Kaiser Industries Corp. v. McLouth Steel Corp.,* 50 F.R.D. 5, 9-10 (E.D.Mich. 1970); *Electronic Specialty Co. v. International Controls Corp.,* 47 F.R.D. 158, 161-62 (S.D.N.Y. 1969); *American Steel Works v. Hurley Construction Co.,* 46 F.R.D. 465, 469-70 (D.Minn. 1969).[7]

The discussion which we undertake herein makes it unnecessary for us to render a final ruling on the propriety of the trial court's action in allowing as costs the travel expenses of

---

[7] Some federal courts have specified, however, that they will depart from the traditional "100-mile rule" only when the witness was essential to the prevailing party's case or when special circumstances existed. *Wade v. Mississippi Coop. Extension Serv.,* 64 F.R.D. 102, 106-107 (N.D.Miss. 1974); *Vorburger v. Cent. of Ga. Ry.,* 47 F.R.D. 571, 573 (M.D.Ala. 1969); *Erving Paper Mills v. Hudson-Sharp Mach. Co.,* 271 F.Supp. 1017, 1023 (E.D.Wis. 1967).

witnesses Hill and Machida. We merely choose to express the following views as guidelines for trial courts to observe in the future when determining whether travel expenses for out-of-state witnesses shall be allowed as costs.

While HRS § 607-9 (1976 Repl.) permits the taxation of actual disbursements deemed "reasonable" by the trial court, we advise trial courts to exercise restraint in taxing as costs the travel expenses of out-of-state witnesses. As expressed by the United States Supreme Court in *Farmer, supra*, regarding costs under Federal Rule 54(d):

> We do not read that Rule as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case. Items proposed by winning parties as costs should always be given careful scrutiny . . . . Therefore, the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute. Such a restrained administration of the Rule is in harmony with our national policy of reducing insofar as possible the burdensome cost of litigation.

379 U.S. at 235.

"Nothing contained in HRS § 607-12, or in any other statute explicitly directs the payment of out of state traveling expenses to a witness from a foreign state testifying in a civil case."[8] *Harkins v. Ikeda, supra*, 57 Haw. at 386, 557 P.2d at 794. We feel, therefore, that pursuant to the provision in HRS § 607-9 (1976 Repl.) for the taxation of "reasonable" costs, trial courts should at least first determine whether it was

---

[8] HRS § 607-12 (1976 Repl.) provides as follows:

*Witnesses' fees, mileage; taxation*. The fees of witnesses shall be as follows: Every witness attending and testifying, or subpoenaed and attending, upon the trial of any civil cause, in any court, shall be paid the sum of $4 for each day's attendance in court, and traveling expenses at the rate of 20 cents a mile each way. Every such witness, coming to attend upon court from any island other than that upon which the court is holding session, shall be entitled to $6 for each day's attendance in addition to the actual round trip costs of plane or ship travel and 20 cents for each mile actually and necessarily traveled on the ground each way.

The fees of witnesses may be taxed in the bill of costs as provided by section 607-9.

necessary and reasonable to bring in the out-of-state witnesses before allowing the travel expenses of those witnesses to be taxed as costs.

Our primary concern lies in the possible discouragement which excessive costs of litigation may pose to the bringing of lawsuits. Although in the instant case the plaintiff is the prevailing party who is seeking reimbursement for the expense of bringing in out-of-state witnesses, in another case it could very well be the defendant who prevails and who seeks reimbursement for the expense of bringing in such witnesses. If such expenses are too often permitted as costs, the resultant effect upon the expense of litigation may ultimately serve to "discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claims to be." *Farmer, supra,* at 235.

As stated by the district court in *Farmer v. Arabian American Oil Co.,* 31 F.R.D. 191, 195 (S.D.N.Y. 1962), *aff'd,* 379 U.S. 227 (1964):

> Concededly, it is preferable to have "live witnesses" appear before the trier of the fact than to offer their testimony by way of deposition or interrogatories; but countervailing considerations including the element of expense cannot be ignored. The cost of procuring the personal attendance of witnesses may be prohibitive or so burdensome or relatively disproportionate to the sums involved in the litigation as to require alternatives . . . . Upon an appropriate motion, the means of obtaining the testimony of the witnesses would have rested with the Court which, in its discretion, could have imposed conditions with respect to which party initially was to bear the expense and provided for its ultimate taxation in favor of the prevailing party.

(Footnotes omitted). We are thus convinced of the desirability of informing the trial court prior to trial of the need for testimony from out-of-state witnesses. The trial court would then be in a position to assess the necessariness of the testimony and the possibility of obtaining that testimony through less expensive alternate means. Thus, in the event that the prevailing party fails to submit to the trial court the question

of acquiring the testimony of the out-of-state witnesses, it would be completely within the discretion of the trial court to refuse to tax as costs the travel and subsistence expenses of these witnesses beyond the amounts allowed by HRS § 607-12 (1976 Repl.). *Farmer, supra,* 379 U.S. at 235; *Morgan v. Kight,* 294 F.Supp. 40, 42 (E.D.N.C. 1968); *Torres v. Compañia Trasatlantica Española,* 261 F.Supp. 105, 109 (D. Puerto Rico 1966).

It also appears that the court below awarded witness subsistence expenses for Drs. Hill and Machida in excess of the statutory amounts provided for by HRS § 607-12 (1976 Repl.). While we likewise caution trial courts against taxing as costs such subsistence expenses in amounts greater than those allowed by statute, it seems sufficient to state that it would have been completely within the trial court's discretion in the instant case to deny out-of-state witness subsistence expenses beyond those allowed by HRS § 607-12 (1976 Repl.). *Harkins v. Ikeda, supra,* 57 Haw. at 387, 557 P.2d at 794.

(2) Witness fees and expenses for persons subpoenaed but not testifying at trial.

Appellants next object to the fees and expenses taxed against them for Tatsumi Sato and Gary Ciriako, both of whom were subpoenaed but did not testify at trial. Sato was one of the police officers who investigated the accident, and Ciriako was one of two passengers in the vehicle driven by appellant Willis. During the course of the trial, appellees' counsel apparently decided that the testimony of these two witnesses would not be necessary, and neither Sato nor Ciriako testified.

HRS § 607-12 (1976 Repl.) outlines the witness fees and expenses which may be paid and then taxed in a bill of costs. This statute provides that the listed fees and expenses may be paid to every witness "attending and testifying, or subpoenaed and attending," in any civil suit. The record fails to reveal whether Sato or Ciriako actually "attended" the trial in this case. Because these witnesses were subpoenaed but did not testify, their entitlement to witness fees and expenses was entirely dependent upon whether they were actually present during the course of the trial.

In light of the record presented, we are unable to resolve the question of the propriety of the trial court's action in taxing the fees and expenses for these witnesses. However, it is clear that the language of HRS § 607-12 (1976 Repl.) is to be plainly construed. *See Laa v. Texeira,* 31 Haw. 147, 149-50, *reh. denied,* 31 Haw. 177 (1929). Therefore, if Sato and Ciriako were not in actual attendance at the trial, they would not have been entitled to any witness fees, and no such fees could have been properly taxed against appellants.

(3) Travel expenses incurred by appellees' counsel in taking depositions.

The court below taxed against appellants the expenses for air fare and subsistence incurred by appellees' attorney in taking depositions in Kona, Hawaii, and in Los Angeles, California. These items of expenditure were improperly allowed as costs by the court below.

It is well-established that traveling and subsistence expenses incurred by counsel in taking a deposition are not recoverable as costs. *Wahl v. Carrier Manufacturing Co.,* 511 F.2d 209, 217 (7th Cir. 1975); *Frigiquip Corp. v. Parker-Hannifin Corp.,* 75 F.R.D. 605, 615-16 (W.D. Okla. 1977); *Norman v. United States,* 74 F.R.D. 637, 639 (D.Del. 1977); *Dorothy K. Winston & Co. v. Town Heights Development, Inc.,* 68 F.R.D. 431, 434 (D.D.C. 1975); *Hope Basket Co. v. Product Advancement Corp.,* 104 F.Supp. 444, 451-52 (W.D.Mich. 1952). In their answering brief, appellees have acknowledged the general applicability of this rule. These expenses should not have been taxed as costs by the court below.[9]

(4) Costs of copies of depositions.

Lastly, appellants object to the taxation of the cost of copies of the depositions of Lawrance Turner, Ursula Turner,

---

[9] A prevailing party may be able, however, to recover the travel and subsistence expenses of its counsel in connection with the taking of a deposition when that counsel is obliged to attend the deposition at an inconvenient place at the sole instance of opposing counsel. *Alonso v. Union Oil Co. of Cal.,* 71 F.R.D. 523, 525 (S.D.N.Y. 1976).

Dr. Edwin Hill, and Dr. Roy Machida.[10] The cost of these copies should not have been allowed by the court below.

"Allowable costs are limited to the cost of the original of depositions and do not include the expense of duplicate copies obtained for convenience of counsel." *Erving Paper Mills v. Hudson Sharp Machine Co.*, 271 F.Supp. 1017, 1023 (E. D. Wis. 1967); *see also Semke v. Enid Automobile Dealers Association*, 52 F.R.D. 518, 519 (W. D. Okla. 1971), *rev'd on other grounds*, 456 F.2d 1361 (10th Cir. 1972); *Hope Basket Co. v. Product Advancement Corp., supra,* 104 F.Supp. at 451-52. There is no indication in the record before us that appellees' counsel "could [not] have had the use of the filed originals as needed upon a proper request and showing". *Semke, supra,* 52 F.R.D. at 519. "[H]is purchase of copies was not necessary but was merely for his convenience" and, hence, should not have been recoverable as costs. *Id.*

### III. OTHER POINTS RELIED UPON BY APPELLANTS

Our holding in Part I, *supra,* makes it unnecessary for us to consider the remaining points raised by appellants.

Reversed and remanded for new trial.

*John D. Thomas, Jr. (Michael F. McCarthy* with him on the briefs; *Hamilton, Gibson, Nickelsen, Rush & Moore* of counsel), for Defendants-Appellants.

*Richard T. Kaneko (Wilfred H. C. Youth* with him on the brief; *Ikazaki, Devens, Lo, Youth & Nakano* of counsel) for Plaintiffs-Appellees.

---

[10] In their opening brief, appellants allege that the cost of a copy of the deposition of Robert Woods was also improperly allowed by the court below. However, the bill of costs filed below fails to reflect the allowance of any charge regarding copies of the deposition of Robert Woods.