JAMES A. HARKINS, Plaintiff-Appellant, and JEAN N. HARKINS, Plaintiff, *v.* GILBERT IKEDA, Defendant-Appellee

NO. 5759

NOVEMBER 29, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., and SODETANI, CIRCUIT JUDGE, IN PLACE OF KIDWELL, J., DISQUALIFIED

OPINION OF THE COURT BY OGATA, J.

This is a negligence action arising out of a "rear end" automobile collision. On February 2, 1972, the circuit court granted the plaintiffs' motion for partial summary judgment on the issue of liability and ordered that only the determination of damages remained for trial. After a jury had rendered a verdict of $40,000 special damages and $10,301 general damages in favor of plaintiff James A. Harkins and zero in favor of his wife,[1] the trial judge granted the defendant's motion for new trial on the ground that the verdict was contrary to the weight of the evidence. A second trial resulted in a jury verdict of $260 special damages and $400.00 general damages in favor of plaintiff and zero in favor of his wife. From a judgment entered accordingly, plaintiff James A. Harkins appeals.

Plaintiff's first specification of error is that the trial court erred in granting the defendant's motion for new trial after

---

[1] Plaintiff's wife, Jean N. Harkins, has not appealed from the final judgment below.

the first jury had returned its verdict. His second specification is that at the end of the second trial the trial court erred in denying his own motion for a new trial or in the alternative motion for additur. An order granting a motion for new trial, although not by itself appealable, may be reviewed after verdict in the second trial. *State v. Chang* 50 Haw. 195, 436 P.2d 3 (1967) (original verdict reinstated). Both the grant or denial of a motion for new trial, however, is within the trial court's discretion and will not be reversed absent a clear abuse of discretion. *Petersen v. City and County*, 53 Haw. 440, 496 P.2d 4 (1972); *Struzik v. City and County*, 50 Haw. 241, 437 P.2d 880 (1968); *Johnson v. Sartain*, 46 Haw. 112, 375 P.2d 229 (1962); *Rainbow Island Productions, Ltd., v. Leong*, 44 Haw. 134, 351 P.2d 1089 (1960); *Pooler v. Stewarts' Pharmacies, Ltd.*, 42 Haw. 618 (1958).

The transcript of the hearing on the defendant's motion for new trial at the end of the first trial shows that the trial court did not believe the evidence adduced at trial supported $40,000 in special damages. The order granting the motion states that "the verdict was contrary to the weight of the evidence." It is no abuse of discretion to grant a motion for new trial where the amount of damages awarded by the jury exceeds the amount possibly justified by the evidence. *Rainbow Island Productions, Ltd., v. Leong, supra; Tuck Chew v. Makee Sugar Co.*, 11 Haw. 453 (1898); *cf. Striker v. Nakamura*, 50 Haw. 590, 446 P.2d 35 (1968).

Plaintiff's own assessment of the evidence adduced at the first trial is that the maximum amount of special damages[2] justified by the evidence was $27,500.[3] Since this figure does

---

[2] By agreement of the parties, the jury was instructed that "[s]pecial damages are those elements of damages proved by the evidence which, if believed, fixes the amount precisely or gives you adequate information to enable you to fix the loss with a reasonable degree of certainty." This has become the law of this case. Rainbow Island Productions, Ltd. *v.* Leong, 44 Haw. 134, 137, 351 P.2d 1089, 1091, (1960).

[3] Past medical bills in evidence for all injuries alleged by plaintiff to be the proximate result of the accident totalled $5,566.97. The estimated cost of a prospective operation recommended by one of plaintiff's doctors (Masterson) would be between $1,890 and $2,110 according to the same doctor.

not approach $40,000, it was not an abuse of discretion to grant the motion for new trial. Indeed, if the motion had not been granted, there would have remained an error of law to be corrected upon appeal. *Condron v. Harl,* 46 Haw. 66, 374 P.2d 613 (1962).

The transcript of the hearing on the plaintiff's motion for new trial at the end of the second trial shows that the trial court remarked that since "this is a jury trial . . . I must deny the motion unless I find that considering the evidence in light most favorable to the defense, no reasonable juror could have reached the conclusion the jurors did in this case." After taking the matter under advisement for seven weeks, the trial court entered an order denying the motion without specifically giving its reason. A trial court may set aside a jury verdict when it appears to be "so manifestly against the weight of the evidence as to indicate bias, prejudice, passion, or misunderstanding of the charge . . . on the part of the jury; or . . . for any legal cause." HRS § 635-56; Rule 59, HRCP. But it must be remembered that respect for the jury's assessment of the evidence is constitutionally mandated.[4]

The jury in the second trial was instructed to award such damages as would compensate plaintiff for all injuries sustained which occurred as a proximate result of the accident. The explanation tendered to us by the defendant for the lower award of special damages in the second trial is that the jury in that trial concluded that the only injuries which proximately resulted from the accident were his dental problems and the need to have x-rays taken of his neck; the defendant's explanation continues that the evidence supports a finding that

---

While plaintiff testified that he could not and did not work for certain periods of time totalling a little over three months, the only evidence given of the value of that lost time was his net yearly income during those periods. The doctor who recommended the prospective operation estimated that if the operation was given, plaintiff would not be able to fully return to work for twelve weeks. While there was also evidence of a decrease in earning capacity, no evidence was given of the value of the income lost as a result of that decrease other than the net yearly income for the period 1967 to 1970, during which time plaintiff's net income increased.

[4] U.S. Constitution, Amendment VII; Hawaii Constitution, Article I, Section 10.

expenses incurred by plaintiff in connection with these injuries were 40% of a $600 dental bill ($240) and $20 for neck x-rays. We agree.[5]

The evidence on the issue of whether the plaintiff's neck injuries were caused by the accident or by some other event is conflicting. Defendant insisted that the plaintiff, himself a doctor and personal-injury lawyer, never sought medical attention for his neck until twenty-two months after the accident and that the neck injury was unrelated to the accident. Although the first jury apparently rejected this version of the facts, the second jury apparently found this to be the case. Our opinion of the facts is, of course, immaterial since the plaintiff does not contend that the evidence is insufficient to support the second jury's verdict.[6] The trial court, which heard all of the evidence, concluded that the jury could have reasonably rendered the verdict that it did. We cannot, on the basis of the cold record on appeal, say that the trial court's denial of plaintiff's motion for new trial is a clear abuse of its discretion.

At the request of counsel for defendant, apparently made in chambers, the trial court "put all witnesses under the rule." As plaintiff's third specification, he urges that the trial court erred by allowing defendant's expert medical witnesses to testify after they admitted that they had previously read depositions of plaintiff's doctors which were read into evidence at trial.

---

[5] The deposition of the plaintiff's dentist was read into evidence in both trials. While the dentist had estimated in his deposition that the portion of the dental bill attributable to the accident totaled $275, the plaintiff testified before the jury in the second trial that the portion of the dental bill attributable to the accident was only 40% of the $600 bill. The fact that in the first trial the defendant had stipulated to the $275 amount is irrelevant because he did not stipulate to a specific amount in the second trial.

[6] The verdict of a jury need only be supported by substantial evidence, i.e., more than a mere scintilla of evidence, to be sustained by an appellate court. E.g., Fernandez v. Hao, 43 Haw. 335 (1959).

In *State v. Leong*, 51 Haw. 581, 583, 465 P.2d 560, 562 (1970), we stated:

> "The purpose for the order excluding a witness from a courtroom is to prevent him from listening to testimony of other witnesses and then 'shaping' or fabricating his testimony accordingly. *United States v. Leggett*, 326 F.2d 613 (4th Cir. 1964); *Witt v. United States*, 196 F.2d 285 (9th Cir. 1952). It would appear that this may not be a very sound reason because there are other ways in which testimonies may be 'shaped' or fabricated.[1]"

In the above footnote 1 we remarked:

> "*E.g.*, by getting all witnesses together and drilling or rehearsing them; or by informing a witness as to testimony of other witnesses by notes, tape recording or other means."

By this comment we certainly did not mean to approve methods of evading a trial court's order. It has been held to be a violation of the rule sequestering witnesses to have a transcript or notes of testimony read to a witness who is under the rule. *See, e.g., Triton Oil and Gas Corporation v. E. W. Moran Drilling Co.*, 509 S.W.2d 678 (Tex. Civ. App. 1974); *Gatto v. Curtis*, 6 Ill. App. 3d 714, 286 N.E.2d 541 (1972). In the case before us, the witnesses were not asked and did not state whether they had read the depositions before or after the rule had been invoked. If they had read the depositions before trial began, they could not have violated "the rule" as expressed by an order of the court, unless the court had, for example, issued a protective order pursuant to Rule 26(c), HRCP, preventing the disclosure of the contents of the depositions. In this case, there was no such pretrial order. Also, there is no record of the precise order excluding witnesses from the courtroom before us. The trial court in overruling plaintiff's objection at trial merely explained:

> "So the record may be clear — I don't know if it is or not — Mr. Landau is objecting to this witness testifying because of the rule against a witness sitting in the courtroom and listening to the testimony from thereafter testifying; prohibits the Doctor who's read the deposition

outside the courtroom from testifying under the same general theory."

Hence, we cannot determine that violation of a court order excluding witnesses occurred. But even if there was a violation of the rule, the sanctions which a court chooses to attach to the violation of its order is a matter within the discretion of that court. *Yoshitomi v. Kailua Tavern, Ltd.*, 39 Haw. 93 (1951); *See generally*, 6 Wigmore §1842, pp. 477-484 (Chadbourn Revision 1976). For the reasons stated above, we hold in this case that the refusal of the lower court to disqualify defendant's expert medical witnesses was not error.

After the conclusion of the second trial, the trial court denied plaintiff's request for an award of costs with respect to round-trip transportation from Connecticut to Hawaii for Dr. Masterson, who testified at the second trial without being subpoenaed, and Mrs. Nicholson, whose unsubpoenaed testimony taken at the first trial was only read into the record at the second trial. The trial court held that HRS § 607-12 (Supp. 1975) must be construed together with the subpoena jurisdiction of the court and that mileage to which a witness is entitled can be no greater than the distance from the state's furthermost subpoena jurisdictional point to the court. In addition, the court declined to award a sum for hotel lodgings for the witnesses as costs. Plaintiff's final specification of error is the refusal to award sums for these "costs."[7]

HRS § 607-9 (Supp. 1975) states:

"No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

All actual disbursements sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs."

---

[7] This specification of error is not expressly included within the four corners of the notice of appeal; however, we have discussed and disposed of this issue since the coverage and scope of the notice of appeal were not raised or argued by the parties and submitted for our determination.

HRS § 607-12 (Supp. 1975) states:

"The fees of witnesses shall be as follows: Every witness attending and testifying, or subpoenaed and attending, upon the trial of any civil cause, in any court, shall be paid the sum of $4 for each day's attendance in court, and traveling expenses at the rate of 20 cents a mile each way. Every such witness, coming to attend upon court from any island other than that upon which the court is holding session, shall be entitled to $6 for each day's attendance in addition to the actual round trip cost of plane or ship travel and 20 cents for each mile actually and necessarily traveled on the ground each way.

The fees of witnesses may be taxed in the bill of costs as provided by section 607-9."

The plaintiff contends that based upon the wording of HRS § 607-12 (Supp. 1975) every witness attending and testifying at, or subpoenaed and attending, a trial is entitled to mileage in addition to $4.00 for each day's attendance in court if the witness resides on the island where the hearing or trial takes place. If, on the other hand, the witness resides on another island, then he is entitled to the actual round trip cost of plane or ship travel and mileage traveled on the ground each way, and in addition $6.00 for each day's attendance. We have no quarrel with this contention. However, plaintiff also argues in his opening brief: "The fact that the legislature later made a distinction between the mileage for the witness coming from another island and one who does not, would seem to indicate that witnesses from outside the state would stand on the same basis as a witness who resides on the island where the trial is held." We have great difficulty in understanding this argument. Apparently, plaintiff relies on the language of HRS § 607-12 (Supp. 1975), prior to its last amendment by Act 88, SLH 1972, which did not make reference to witnesses traveling to attend court from another island. We reject such an argument.

Rule 54(d), HRCP, provides in pertinent part: "Except when express provision therefor is made either in a statute or

in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . . ."

The allowance of costs to the prevailing party is not obligatory under the language of Rule 54(d), HRCP, *see* Wright & Miller, Federal Practice and Procedure, Civil § 2668, and the circuit court is vested with a sound discretion in allowing or disallowing all costs or only particular items. *Abreu v. Raymond,* 56 Haw. 613, 546 P.2d 1013 (1976); *Farmer v. Arabian American Oil Co.,* 379 U.S. 227 (1964). Thus it was stated in *Farmer v. Arabian American Oil Co.,* 379 U.S. at 235 that "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute."

Nothing contained in HRS § 607-12 (Supp. 1975), or in any other statute explicitly directs the payment of out of state traveling expenses to a witness from a foreign state testifying in a civil case. The last sentence of the first paragraph of this section which refers to witnesses "coming to attend upon court from any island other than that upon which the court is holding session" has reference to witnesses who are required to travel from one or more of the islands of the state to another island to testify in court.[8] Moreover, the record is bereft of any compelling reason which would show that the plaintiff had any sufficient justification to support his claim for his witnesses' out of state travel expenses. Consequently, we cannot hold that the trial court abused its discretion.[9]

---

[8] See Spec. Com. Rep. 9, House Journal. Regular Session 1972, pp. 1115, 1120, of the Joint House-Senate Interim Committee to Receive and Report on Statutory Revision Program of the Committee on Coordination of Rules and Statutes, on H.B. 2040-72, which became Act 88, SLH 1972. *See also* HRS § 621-7 (Supp. 1975) and Senate Committee Report 577 on S. B. No. 648, Senate Journal. Regular Session 1963, p. 869.

[9] No separate order for costs is filed in the record; but the parties finally disposed of this problem of costs by the entry of a stipulation for the taxation of costs, which provided, *inter alia,* that the costs of air transportation for the witness who testified at the second trial was $44.27, and the cost of ground transportation was $32.00, *i.e.,* 160 miles at the rate of $.20 per mile.

Likewise, we have not found any direct authority, and plaintiff has not been able to furnish us with any, on the proposition that hotel lodgings for witnesses are taxable as costs. However, we do discern that since the legislature has made the distinction that witnesses from any island other than that upon which the court is holding session would be entitled to receive $6.00 for each day's attendance rather than $4.00 for resident witnesses, the $2.00 difference paid to witnesses from another island must be attributable to subsistence allowance. Accordingly, we are not disposed to find the trial court's refusal to award plaintiff a specific sum for hotel lodgings to be error. *Cf. Laa v. Texeira,* 31 Haw. 177 (1929).

Judgment is affirmed.

*Samuel Landau* for plaintiff-appellant.

*Joseph Schneider (Conklin & Schneider* of counsel) for defendant-appellee.