STATE OF HAWAII, Plaintiff-Appellee, *v.* JOHN L. TEVES, JR., Defendant-Appellant

APPEAL NO. 9060

(CRIMINAL NO. 2501)

MARCH 16, 1984

BURNS, C. J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C. J.

Defendant-appellant John L. Teves, Jr. (Teves), was convicted of seven counts: two counts of attempted robbery in the first degree in violation of Hawaii Revised Statutes (HRS) §§ 705-500 and 708-840(b)(ii); two counts of kidnapping in violation of HRS § 707-720(1)(d); two counts of sexual abuse in the first degree in violation of HRS § 707-736(1)(a); and one count of rape in the first degree in violation of HRS § 707-730(1)(a)(i).

Teves argues four points on appeal: (1) that he had an unqualified right to be told by the State about the progress and results of tests conducted with respect to pubic hair samples, tire castings, and fingerprint evidence; (2) that the lower court erred in admitting into evidence the complaining witnesses' identification of him as their assailant at the photographic line-up and in court; (3) that the State should have given him advance notice of its intent to call Arthur Myer as one of its rebuttal witnesses; and (4) that the lower court erred in denying his motion for new trial.

We find no merit in points 1, 2, and 3. We find some merit in point 4.

Teves's motion for new trial, made pursuant to Rule 33, Hawaii Rules of Penal Procedure (HRPP),[1] was based on the uncontroverted allegation that one of the prosecution's rebuttal witnesses gave false testimony. We set aside the denial of the motion and remand for its reconsideration under the test announced in this case.

At approximately 1:15 p.m., on March 16, 1982, on Kauai, two women were sexually assaulted by a lone male. They stated that the assailant carried a machete, wore sunglasses, and had a yellow T-shirt tied around his head. The police were promptly notified, and upon their arrival, they were informed by the women that immediately prior to the incident they saw two men in a pickup truck. The truck was described by one of the women as a green pickup with a gun rack on the back window. However, upon being returned to the scene of the incident and seeing a similar brown truck owned by the police, both women stated that the pickup they saw immediately prior to the incident was brown, not green.

Later that evening, Teves told the police that he had been in the area from 7:30 a.m. to a little past 10:30 a.m. with Jonathan Reis (Reis). They had ridden in Reis's brown pickup truck which was pulling a horse trailer. Teves denied seeing the women's black car but admitted seeing "one van — somebody had chop the back — the guy was picking fern, one haole guy." The driver of a 1964 Dodge A100 Van Pickup, Robert Figg, testified at trial that on the

---

[1] **Rule 33 of the Hawaii Rules of Penal Procedure provides:**

The court on motion of a defendant may grant a new trial to him if required in the interest of justice. If trial was by the court without a jury, the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial shall be made within 10 days after verdict or finding of guilty or within such further time as the court may fix during the 10-day period. The finding of guilty may be entered in writing or orally on the record.

Hawaii's Rule 33 differs from its federal counterpart which provides in relevant part as follows:

[A] motion for new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment. . . . A motion for a new trial based on any other grounds shall be made within 7 days after verdict[.]

day of the incident he was in the area picking ferns, but did not arrive in the area until after 1:00 p.m.

Initially, Reis corroborated Teves's story. However, on March 19, 1982, Reis recanted and told the police the story he eventually testified to at trial.

Reis testified that at approximately 9:00 a.m. on March 16, 1982, he drove his father's brown 1981 Ford pickup truck, pulling a horse trailer containing two horses, into the area of the incident to look for Reis's lost hunting dog. Teves accompanied him. They returned to Reis's house at about noon. After a meal, they left the horse trailer at home, went to a store to pick up meat scraps, and then returned to the area of the incident. They drove to a hunter's check-in station and then turned around and headed back toward Kapaa. At a river crossing, they passed two women standing by a car. After driving on a short distance, they stopped. Reis took the meat scraps and walked up the Kuilau trail while Teves remained in the pickup. When Reis returned, Teves was not in sight. Reis drove slowly toward Kapaa for a mile or so then turned around and headed back. A short time later, he saw Teves running toward him. Teves was carrying two shirts, a machete, and dark glasses. When Reis asked him where he had been, Teves in essence stated that he held up the two women, disrobed them, threw their clothes and car keys in the river, and had sexual intercourse with one of them. When Reis got home that afternoon, he told his friend and house guest Carl Kaui what had happened.

Kaui testified that later that day he went to Teves's house and asked Teves, "What you did to that [sic] girls?" and Teves responded in a kind of bragging tone, "You don't know what I did to the girls." When Kaui mentioned that the police had been asking questions, Teves responded, in Kaui's words, that "if he got to serve his time, he going to serve."

On March 18, 1982, the police conducted a six-person photo line-up and both women identified Teves as their assailant. At trial, both identified Teves as their assailant.

Teves's defense was that (1) he had an alibi and (2) a man named Fred Farias was a more appropriate suspect. Teves introduced evidence that he and Reis's father's pickup were both at home at the time of the incident; that Reis's father's pickup does not have a gun rack on the back window and that it has pipe

framing over its bed; that Farias's father has a green 1976 Chevrolet pickup truck, with a gun rack attached to the back window; that Farias matched the description given by the women; that Farias had previously been in trouble with the law; that an anonymous caller to Teves's home implicated Farias; that Reis and Kaui have reputations for untruthfulness; and that Reis wanted to curry favor with the prosecution because on March 22, 1982 Reis's father was going to trial on Kauai for attempted murder.

On rebuttal, one of the women testified that Farias was not her assailant, and then Farias's father, Arthur Myer, testified on direct examination as follows:

Q. Where do you work, Mr. Myer?

A. Locally, Hawaiian Dredge.

Q. Do you use this truck for your work?

A. Right.

Q. Every day?

A. Every day.

Q. On March 16, a Tuesday, 1982, where was this truck between 8:00 and 4:30? Do you know?

A. Well, I work every day, so I use the truck every day to go to work because I have no transportation to go back and forth.

Q. Were there any days that you were sick from work so that the truck would have been home available to someone other than yourself?

A. No.

On cross examination, he testified as follows:

Q. On March 16, on what area of Nawiliwili were you laying pipes?

A. Right in the parking lot.

Q. What time did you have lunch that day?

A. 11:00.

Q. What time did you go back to work?

A. 12:30.

Q. Did you eat lunch at the jobsite?

A. Yeah, right there in my truck.

Q. And at 12:30 you were pau lunch and you went back to work?

A. Right there in the parking lot.

Q. And you left your truck?
A. Right there. I locked 'em.

\* \* \* \* \*

Q. (By Mr. Jung) Do you know where your son was on March 16, 1982, about 1:30 in the afternoon?
A. I was working.
Q. So you don't know?
A. I don't know. I was working that day.

The jury rendered their verdict of guilty on August 6, 1982.

On August 11, 1982, Teves filed a motion for new trial alleging, *inter alia,* that Myer testified falsely. At a hearing on October 13, 1982, the keeper of records at Hawaiian Dredging testified:

Q. Can you refer to those records and tell the Court whether or not Arthur Meyer [sic] was working on Tuesday, March 16, 1982?
A. No, sir.
Q. Beg pardon?
A. No, sir.
Q. He did not work that day? (No oral response.)
Q. Did he work any day that week?
A. No, sir.

The State called no witnesses.[2] The trial judge denied the motion and sentenced Teves.

The rule applicable to newly discovered evidence is as follows:

A motion for new trial based on newly discovered evidence will be granted only if all of the following requirements have been satisfied: (1) the evidence has been discovered after trial; (2) such evidence could not have been discovered before or at trial through the exercise of due diligence; (3) the evidence is material to the issues and not cumulative or offered solely for purposes of impeachment; and (4) the evidence is of such a nature as would probably change the result of a later trial. *Territory v. Abad,* 39 Haw. 393, 395, *appeal dismissed,* 206 F.2d 861 (9th Cir. 1953). The denial of a motion for new trial is within the

---

[2] The prosecutor has not required Mr. Myer to explain his apparently false testimony. Since Mr. Myer may have committed perjury, we do not understand the prosecutor's inaction.

sound discretion of the trial court and will not be upset absent a clear abuse of discretion. *See Harkins v. Ikeda,* 57 Haw. 378, 380, 557 P.2d 788, 790 (1976); *Struzik v. City and County of Honolulu,* 50 Haw. 241, 246, 437 P.2d 880, 884 (1968).

*State v. McNulty,* 60 Haw. 259, 267-268, 588 P.2d 438, 445 (1978), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).

The lower court applied the *McNulty* standard and decided that Teves did not satisfy the fourth requirement. However, the question is whether the *McNulty* standard applies where the post-trial discovery indicates that testimony given at trial by a prosecution witness was false even though no government culpability is alleged or shown.

Some federal circuit courts decline to distinguish between false evidence situations and new evidence situations and apply the *McNulty* standard to both. *United States v. Krasny,* 607 F.2d 840 (9th Cir. 1979); *United States v. Stofsky,* 527 F.2d 237 (2nd Cir. 1975).

A majority of circuit courts make a distinction and, in cases involving false evidence, apply the standard set forth in *Larrison v. United States,* 24 F.2d 82 (7th Cir. 1928). *United States v. Runge,* 593 F.2d 66 (8th Cir.), *cert. denied,* 444 U. S. 859, 100 S. Ct. 123, 62 L.Ed.2d 80 (1979); *United States v. Jackson,* 579 F.2d 553 (10th Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978); *United States v. Wallace,* 528 F.2d 863 (4th Cir. 1976); *United States v. Meyers,* 484 F.2d 113 (3rd Cir. 1973); *United States v. Strauss,* 443 F.2d 986 (1st Cir.), *cert. denied,* 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971); *Newman v. United States,* 238 F.2d 861 (5th Cir. 1956).

Under the *Larrison* standard a new trial must be granted when: (a) The court is reasonably well satisfied that the testimony given by a material witness is false. (b) That without it the jury *might* have reached a different conclusion. (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it for it did not know of its falsity until after the trial.

24 F.2d at 87-88 (footnote omitted).

Additionally, "[t]he Larrison rule does not come into play unless defendant has acted with due diligence in bringing the perjury or recantation to the attention of the court." 3 WRIGHT, FEDERAL PRACTICE AND PROCEDURE: *Criminal* § 557.1 at 344 (1982) (footnote

omitted).

There are various differences between the *McNulty* new evidence standard and the *Larrison* false evidence standard. First, the *McNulty* standard involves the existence and discovery of new evidence. The *Larrison* standard involves an allegation that false testimony was given at trial. Second, the *McNulty* standard concerns itself with what will occur at a new trial. The *Larrison* standard concerns itself with what would have occurred at the first trial. Third, the *McNulty* standard requires a showing that a materially different result probably would occur. The *Larrison* standard requires a showing that a materially different result might have occurred.

Considering those differences, we view parts of the *McNulty* standard to be inapplicable to situations where it is discovered post-trial that false testimony by a prosecution witness was considered by the trier of fact.

Moreover, we think (b) and (c) of the *Larrison* standard need to be amended. With respect to (b), we prefer the harmless error rule. In criminal appeals the court's uninvited and unwaived error at trial is generally reversible at defendant's request unless it is deemed harmless. *State v. Rivera,* 62 Haw. 120, 612 P.2d 526 (1980). We know of no reason why that standard should not be applied in situations involving the discovery after trial that a prosecution witness gave false testimony. Under that standard the testimony is deemed not harmless if there is a reasonable possibility that it contributed to the conviction.[3] The testimony is deemed harmless if beyond a reasonable doubt it did not contribute to the conviction. *State v. Antone,* 62 Haw. 346, 615 P.2d 101 (1980). With respect to (c), we think the *McNulty* standard says it better than the *Larrison* standard.

Accordingly, we announce a new test to be applied in criminal cases where the defendant seeks a new trial under Rule 33, HRPP, on the grounds that a prosecution witness gave false testimony at trial. We hold that upon a proper and timely[4] motion under Rule

---

[3] The question is often stated as follows: Whether there is a reasonable possibility that the error might have contributed to conviction. *See, e.g., State v. Heard,* 64 Haw. 193, 638 P.2d 307 (1981). The words "might have" are misleading surplusage and, thus, we have omitted them.

[4] *See State v. Meafou,* 67 Haw. ____ (No. 8592, February 10, 1984).

33, HRPP, a new trial must be granted by the trial court when it decides that (1) it is reasonably satisfied that the testimony at trial of a material prosecution witness is false; (2) defendant and his agents did not discover the falseness of the testimony until after the trial; (3) the late discovery is not due to a lack of due diligence by defendant or his agent; and (4) the false testimony is not harmless because there is a reasonable possibility that it contributed to the conviction.

Therefore, we set aside the denial of Teves's motion for new trial and remand this case for reconsideration of the motion for new trial under the test announced in this opinion.

Reversed and remanded.

*Paul E. DiBianco* for appellant.

*Lorna A. Nishimitsu,* Deputy Prosecuting Attorney, County of Kauai, for appellee.