**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000460
17-DEC-2021
07:54 AM
Dkt. 135 SO**

NO. CAAP-20-0000460

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAII, Plaintiff-Appellee,
v.
DARRYL M. FREEMAN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(1CPC-17-0000248)

### SUMMARY DISPOSITION ORDER
(By:  Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Darryl M. **Freeman** was convicted by a jury of several offenses arising from a road rage incident. Freeman appeals from the **Judgment** of Conviction and Sentence entered by the Circuit Court of the First Circuit on June 17, 2020.[1]  For the reasons explained below, we affirm the Judgment.

On March 4, 2017, Freeman and Keenyn **Pahio** were involved in a confrontation.  Pahio was fatally shot in the head. A grand jury returned a four-count indictment against Freeman: **(1)** Murder in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) §§ 707-701.5 and 706-656; **(2)** Place to Keep Pistol or Revolver in violation of HRS § 134-25; **(3)** Ownership or Possession Prohibited of Any Firearm or Ammunition by a Person Convicted of Certain Crimes in violation of HRS § 134-7(b) and

---

[1]  The Honorable Karen T. Nakasone presided.

(h); and **(4)** Carrying or Use of Firearm in the Commission of a Separate Felony in violation of HRS § 134-21.[2]  Freeman pleaded not guilty.

Jury trial began on September 28, 2018.  On October 9, 2018, the jury returned a verdict of guilty as charged on all counts.  On June 17, 2020, Freeman was sentenced to concurrent terms of: life imprisonment with the possibility of parole, with a mandatory minimum term of 15 years, on Count 1; 10 years on Count 3 (merged with Count 2); and 20 years on Count 4.[3]  This appeal followed.

Freeman raises four points of error:

**(1)** The trial court erred when it failed to sufficiently investigate a violation of the witness exclusionary rule and to craft a sufficient remedy;

**(2)** The trial court erred when it concluded that [the arresting police officer] informing Freeman that the police were responding to a shooting type case and that he matched the suspect description was not custodial interrogation and denied his motion to suppress his statements;

**(3)** Freeman's rights to a fair trial and to a presumption of innocence were violated because witnesses for the State used the word "victim" multiple times in their testimony; and

**(4)** The [deputy prosecuting attorney] committed prosecutorial misconduct and denied Freeman his right to a fair trial when he commented on his insufficient showing of remorse for Pahio's death.

---

[2]  A superseding indictment was filed on June 1, 2017, after more firearms were found in Freeman's house during execution of a search warrant. None of those firearms were involved in the March 4, 2017 incident.  New counts 5-11 were severed.  Freeman pleaded guilty to count 5 (Ownership or Possession Prohibited of Any Firearm or Ammunition by a Person Convicted of Certain Crimes, in violation of HRS § 134-7(b) and (h)), and counts 6-11 were dismissed pursuant to a plea agreement.

[3]  Freeman was also sentenced to 10 years on Count 5 of the superseding indictment, to be served concurrently with the sentences on Counts 1, 3, and 4.

**1.  The trial court did not abuse its discretion by allowing testimony from a witness who violated the witness exclusion rule.**

Rule 615 of the Hawaii Rules of Evidence (**HRE**), commonly referred to as the "witness exclusion rule," provides in relevant part:

> **Exclusion of witnesses.**  At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.

"The purpose of HRE Rule 615 is to prevent the shaping of testimony by one witness to match that of another, and to discourage fabrication and collusion."  State v. Elmaleh, 7 Haw. App. 488, 492, 782 P.2d 886, 889 (1989) (cleaned up).

The trial court invoked the witness exclusion rule at the beginning of Freeman's trial.  The court stated:

> Under the witness exclusionary rule attorneys must also instruct all of their witnesses not to discuss this case or what their testimony has been or would be or what occurs in the courtroom with anyone other than counsel for either side.  And counsel must implement this rule with regard to any witnesses not present in the courtroom.

The State's second witness testified that she and other witnesses had talked about what they had seen and heard at the scene of the shooting.  This happened while the witnesses were in the hallway outside the courtroom waiting to be called to testify.  On redirect, the witness clarified that she had testified from her personal knowledge; the only question to which she responded based on what she learned from another witness was in response to a question on cross-examination about the color of another witness's car.  On re-cross, the witness explained, "yeah, they were asking who I was and where my point of view was. . . . We were all just talking out there."

After the witness was released, Freeman requested a bench conference.  The trial court acknowledged that the witness exclusionary rule had been violated.  The court asked Freeman's

counsel, "What do you want to do?"  Freeman's counsel requested a recess so he could check with his office.  The court excused the jury for lunch, and instructed the State to confirm that it had instructed its witnesses not to speak to each other about the case.

When proceedings resumed, the State represented that "the victim witness advocate . . . indicated that she spoke to the witnesses and specifically told them not to talk to each either [sic] about the facts and testimony in the case."  Freeman moved for a mistrial.  The trial court ruled:

> Okay.  The court went back and I did review what exactly it was that was the testimony that appeared to have been learned by Miss Crawford from it appears to be Mr. Roman, the witness right before her.  And it appears to be her testimony regarding seeing the man get out of a, quote, black car, unquote.  And given the nature of the testimony that was learned through the other witness and there does appear to be a good -- the court agrees that there has been a violation of the witness exclusionary rule, but given the nature of the testimony at issue, I'm going to deny the motion for mistrial.  Okay.
>
> Anything else for the record?

The State had nothing to add.  Freeman asked that the State instruct its witnesses to not refer to Pahio as "the victim." The State agreed.  Freeman had "[n]othing further[.]"

"[T]he sanctions which a court chooses to attach to the violation of its sequestration order is a matter within the discretion of the court." Elmaleh, 7 Haw. App. at 493, 782 P.2d at 889 (quoting Harkins v. Ikeda, 57 Haw. 378, 384, 557 P.2d 788, 792 (1976)) (brackets omitted).  Noncompliance with an HRE Rule 615 order does not require a new trial "unless the court's decision to allow the allegedly tainted testimony was an abuse of discretion or resulted in prejudice to the defendant.  The defendant has the burden of proving that there was either prejudice or an abuse of discretion." Id. at 493-94, 782 P.2d at 890 (cleaned up).

Freeman did not show how he was prejudiced by the second witness's testimony.  He did not, for example, argue that

4

the color of the other witness's car was material to the jury's determination of his guilt. Rather, he implicitly confirms a lack of prejudice by arguing that the trial court should have <u>sua sponte</u> conducted an investigation "to thoroughly investigate the violation and consider potential remedies, including sanctions other than a mistrial." Freeman did not ask for leave to voir dire each (or any) of the prosecution's witnesses to determine what information they shared, how the HRE Rule 615 violation impacted their testimony (for the two who had already testified), or how their memories may have been refreshed or influenced by talking with other witnesses. On the record before us, we cannot say that Freeman sustained his burden of proving prejudice, nor can we say that the trial court abused its discretion by denying Freeman's motion for mistrial, the only remedy he sought.

### 2. The trial court did not err by denying the motion to suppress Freeman's statement to the arresting officer.

Freeman filed a motion to suppress a statement he made to the Honolulu Police Department (**HPD**) officer who arrested him, Corporal Aiku **Caretti**. The trial court denied the motion.

> [W]hen the defendant's pretrial motion to suppress is denied and the evidence is subsequently introduced at trial, the defendant's appeal of the denial of the motion to suppress is actually an appeal of the introduction of the evidence at trial. Consequently, when deciding an appeal of the pretrial denial of the defendant's motion to suppress, the appellate court considers both the record of the hearing on the motion to suppress and the record of the trial.

<u>State v. Vinuya</u>, 96 Hawaiʻi 472, 481, 32 P.3d 116, 125 (App. 2001) (citations omitted).

At the hearing on Freeman's motion, Corporal Caretti testified that he was given the license plate number of a white van allegedly involved in a shooting, and the registered owners' names and address. He and two other HPD officers went to the address. The other officers called out, "Darryl, Darryl." Freeman came out of the driveway. Freeman matched the

description of the suspect in the shooting.  Corporal Caretti handcuffed Freeman.  Corporal Caretti testified:

> Q. When you were with that individual, what happened next?
>
> A. He asked me, "What is all this about?"
>
> Q. And what did you say to him?
>
> A. I explained to him I was investigating a murder type, shooting type case, and that the witnesses gave a license plate that came out to his vehicle, and that's why we were there.
>
> Q. Okay. And then what happened at that point?
>
> A. He spontaneously uttered, "Are you kidding me? I just came from town on my way to the post office."
>
> Q. Okay. Did you ever ask -- at any time in your interaction with this individual up to this point, did you ask any questions of him?
>
> A. No.
>
> Q. Did any of the other officers ask any questions of him?
>
> A. No.
>
> Q. Okay. At any time did you make any promises to the defendant to get him to make any statements?
>
> A. No.
>
> Q. Did you ever assault the defendant?
>
> A. No.
>
> Q. Did you ever browbeat the defendant?
>
> A. No.
>
> Q. Coerce the defendant?
>
> A. No.
>
> Q. Force him to make any statements?
>
> A. No.
>
> Q. Did you ever entice him?
>
> A. No.
>
> Q. Make any promises of immunity to him?
>
> A. No.

Freeman testified:

Q. Okay. Now, you heard the testimony that -- did you at some point ask them what is this about?

A. Yeah, I asked them what -- you know, when -- when -- when they -- when they grabbed me, I said, "What's this all about?"

Q. What happened when you told them -- or you asked them, "What is this about"?

A. They said, "You know what this is about."

Q. So you were told that by the police officers?

A. Yeah.

Q. Okay. And what followed after you were told, "You know what this is about"?

A. They proceeded to tell me they're investigating a shooting and that I was a suspect.

Q. Okay. And did they say anything else at that point?

A. No.

Q. Okay. Now, you heard the testimony that you -- you said something like, "You're kidding me? I came from town on my way to the post office"?

A. Yeah. When they told me that -- I told them that exactly what I have been doing.

Q. Okay.

A. I told them I had just come from town, and I was on my way to the post office.

Q. Did you say that with -- you know, did you volunteer that statement to the officers?

A. I felt compelled just the way they were handling me.

. . . .

Q. Okay. Now, when you said, "You're kidding me? I came from town on the way to the post office," you said you felt compelled. Was that after you had been provided the information and been told that "You know what this is about"?

A. That's correct.

Freeman does not challenge the following findings of fact, which are binding on him in this appeal, State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019):

6. Freeman asked Officer Caretti "what is this about?" to which Officer Caretti informed him that HPD was investigating a shooting type case and a witness gave his license plate number and described a male matching his physical characteristics. Officer Caretti did not ask Freeman any questions.

7. [Freeman] then stated to Officer Caretti, "You're kidding me. I came from town on my way to the Post Office."

8. At approximately 1:50 p.m. after further investigation, Officer Caretti arrested [Freeman] for murder in the second degree.

9. At no time during the detention did Officer Caretti, or any other officers, force, threaten, assault, browbeat, make any promises to, or otherwise entice Freeman to make either statement.

10. Officer Caretti was credible.[4]

Freeman challenges the trial court's conclusions of law nos. 10 and 11:

10. At the Defendant's home, the police neither questioned him nor made any statements designed to elicit an incriminating response from him. The Defendant asked a question and Officer Caretti responded. The Defendant's question was "what is this about?" to which Officer Caretti responded by informing him of why they were there, being they were there in response to a shooting type case and witnesses provided a suspect description, a vehicle description, and a license plate number that matched him and his vehicle. This information was not in the form of a question and was not a statement designed to elicit an incriminating response.

11. The information provided by Officer Caretti in response to the Defendant [sic] question did not require any response. Nevertheless, the Defendant stated without being asked, provoke [sic], or otherwise elicited and after hearing the information from Officer Caretti, "You're kidding me. I came from town on my way to the Post Office." This statement was also not in response to a question or a statement designed to elicit an incriminating response. Because the two statements by the Defendant were not in response to questioning and not in response to any statement by Officer Caretti made to elicit an incriminating response, the statements are not the product of custodial interrogation.

---

[4] "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

These conclusions address mixed questions of fact and law. "[A] conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case." Rodrigues, 145 Hawaiʻi at 494, 454 P.3d at 435 (cleaned up). A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned. Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).

We have held: "Generally, informing a defendant of the reason for being stopped or arrested does not constitute custodial interrogation likely to elicit an incriminating response." State v. Vasconcellos, No. CAAP-19-0000465, 2020 WL 3027399, at *4 (Haw. App. June 5, 2020) (SDO) (quoting State v. Sagapolutele-Silva, No. CAAP-19-0000491, 2020 WL 1699907, at *9 (Haw. App. Apr. 8, 2020) (SDO).[5] After Corporal Caretti handcuffed Freeman, his response to Freeman's question "What is all this about?" constituted "words . . . normally attendant to arrest and custody." United States v. Moreno-Flores, 33 F.3d 1164, 1169 (9th Cir. 1994) (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). "[W]hen an officer informs a [suspect] of [the] circumstances" of their arrest or explains evidence against them, "this information may be considered normally attendant to arrest and custody." Id. (quoting United States v. Crisco, 725 F.2d 1228, 1232 (9th Cir. 1984)). The trial court's conclusions of law nos. 10 and 11 were supported by substantial evidence and reflect an application of the correct rule of law.[6]

---

[5] The Hawaiʻi Supreme Court has granted certiorari in both cases, but has yet to rule on either. See State v. Vasconcellos, SCWC-19-0000465, 2020 WL 5870280 (Haw. Oct. 2, 2020); State v. Sagapolutele-Silva, SCWC-19-0000491, 2020 WL 5544434 (Haw. Sept. 16, 2020).

[6] Freeman did not object to Corporal Caretti's trial testimony, which was substantially identical to his testimony during the hearing on Freeman's motion to suppress. However, "when a defendant's motion to suppress evidence is denied prior to trial, the defendant need not object at trial to
(continued...)

> **3.    The trial court did not plainly err by not <u>sua sponte</u> declaring a mistrial or giving curative instructions after two witnesses referred to Pahio as the "victim."**

The trial court granted Freeman's motion in limine to preclude, among other things, any prosecution witness from referring to Pahio as the "victim."

During Freeman's trial, two of the civilian eyewitnesses to the incident referred to Pahio as the "victim." The first eyewitness twice referred to Pahio as the "victim." Freeman did not object, move for a mistrial, or request a curative instruction.

The second eyewitness referred to Pahio as the "victim" four times. After the second time, Freeman objected and a bench conference was held. The trial court instructed the State to remind each witness to refrain from using the term "victim" when referring to Pahio. After the third time, the trial court instructed the witness, "you need to refer to the -- just the man on the ground. Okay?" After the fourth time, Freeman objected and the trial court instructed the State to "talk to this witness and then go talk -- make sure you talk to the -- whoever else is going to testify today so we don't have anymore [sic] of this." Freeman did not move for a mistrial or request a curative instruction.

The State and its witnesses should refrain from using the word "victim" to refer to the complaining witness; the word is "conclusive in nature and connotes a predetermination that the person referred to had in fact been wronged." <u>State v. Mundon</u>, 129 Hawaiʻi 1, 26, 292 P.3d 205, 230 (2012) (citing <u>State v. Nomura</u>, 79 Hawaiʻi 413, 416, 903 P.2d 718, 721 (App. 1995)).

---

[6](...continued)
the introduction of the evidence to preserve [their] right to appeal the pretrial denial of [their] motion to suppress and the introduction of the evidence at trial." <u>State v. Kong</u>, 77 Hawaiʻi 264, 266, 883 P.2d 686, 688 (App. 1994) (citing <u>State v. Reese</u>, 61 Haw. 499, 605 P.2d 935 (1980) (additional citations omitted)). Nevertheless, Freeman's opening brief makes no argument about Corporal Caretti's trial testimony.

Unlike <u>Mundon</u> or <u>Nomura</u>, the trial court in this case granted Freeman's motion in limine and instructed the State (more than once) to direct its witnesses to refrain from using the word "victim" when referring to Pahio.  Both witnesses who used the word "victim" were civilian eyewitnesses; neither was a law enforcement officer, coroner, expert witness, or other person from whose testimonial vernacular the word "victim" should have been purged.  The deputy prosecuting attorney did not use the word "victim" in opening statement, during examination of witnesses, or in closing argument.  The trial court did not use the word "victim" in the jury instructions, as was the case in <u>Nomura</u>, 79 Hawaiʻi at 417, 903 P.2d at 722.  We decline to recognize plain error where overwhelming evidence supported the conviction.[7]  <u>See</u> <u>Mundon</u>, 129 Hawaiʻi at 26, 292 P.3d at 230 (concluding that references by prosecutor and witnesses to the complaining witness as "the victim" were harmless error); <u>State v. Balcita</u>, Nos. CAAP-14-0001044 and CAAP-14-0001043, 2015 WL 5568006, *3-4 (Haw. App. Sept. 21, 2015) (SDO) ("In light of the strong evidence against Balcita," the 28 instances of "improper use of 'victim(s)' to refer to the complaining witnesses did not constitute error affecting the fairness, integrity, or public reputation of judicial proceedings.") (citation omitted).

---

[7]     Several eyewitnesses identified Freeman and his van and testified that they saw Pahio at the driver's window of Freeman's van; they did not see anything in Pahio's hands as he approached or stood at the window of Freeman's van; there appeared to be a confrontation; there was a gunshot; and Pahio fell back and was on the ground near the rear driver's-side wheel of the van. Gunshot residue particles were found on Freeman's hands but no particles were found on Pahio's hands.  Further, several witnesses testified they saw Freeman run over Pahio as he was fleeing the scene.  We note that Freeman is a retired Honolulu Fire Department battalion chief and, as a trained first-responder, would be expected to remain at the scene until other first responders arrived. He did not call 911 for an ambulance or police, even though he had his cell phone with him.  Instead, he drove to the Keaīwa Heiau, wrapped the gun in a ti leaf, and dropped it into a hole in the wall of the heiau.

> **4.      The trial court did not plainly err by
> not <u>sua sponte</u> declaring a mistrial when
> the State commented on Freeman's
> testimonial demeanor during closing
> argument.**

Freeman testified in his own defense at his trial.  In
closing argument, the deputy prosecuting attorney told the jury:

> When he testified -- if you noticed this too.  When he
> testified, he talked about his daughter in Seattle.  He
> started to tear up.  When I ask him you shot, you killed
> Keenyn Pahio, not a tear.  Not a drop.  Because crying
> benefits him.  He just did it in the wrong place.  He should
> have cried over the death of Keenyn Pahio, but he didn't.
> It's because he murdered him.

Freeman did not object to the argument.  He did not move for a
mistrial.  He argues — for the first time on appeal — that the
deputy prosecuting attorney's argument was misconduct.  His
argument lacks merit.

If a defendant does not object to a prosecutor's
allegedly improper conduct, "appellate review is limited to a
determination of whether the prosecutor's alleged misconduct
amounted to plain error" that affected the defendant's
substantial rights.  <u>State v. Riveira</u>, 149 Hawaiʻi 427, 431 n.10,
494 P.3d 1160, 1164 n.10 (2021) (citation omitted).  When
reviewing allegations of prosecutorial misconduct, the following
factors are considered: (a) the nature of the conduct; (b) the
promptness of a curative instruction; and (c) the strength or
weakness of the evidence against the defendant.  <u>State v.
Salavea</u>, 147 Hawaiʻi 564, 581, 465 P.3d 1011, 1028 (2020).

**(a)**  The deputy prosecuting attorney's conduct was not
improper.  When the defendant testifies at trial, "[t]he
prosecution may comment on the defendant's testimonial
demeanor[.]"  <u>State v. Walsh</u>, 125 Hawaiʻi 271, 293 n.40, 260 P.3d
350, 372 n.40 (2011) (citations omitted).  The comment about
Freeman's testimonial demeanor was not a prohibited "generic
tailoring" argument.  <u>See</u> <u>id.</u> at 285-86, 260 P.3d at 364-65.

12

**(b)** No curative instruction was given because Freeman did not object to the deputy prosecuting attorney's argument.

**(c)** The evidence against Freeman was overwhelming. See supra note 7.

On this record, we decline to recognize plain error.

For the foregoing reasons, the Judgment of Conviction and Sentence entered by the circuit court on June 17, 2020, is affirmed.

DATED:  Honolulu, Hawaiʻi, December 17, 2021.

On the briefs:

William K. Li,
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge